# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**Cynthia Catherine Price aka Cynthia Ballenger and Christopher John Price**

**Plaintiffs,**

**v.**

**UNITED STATES OF AMERICA,**
**UNITED STATES FEDERAL BUREAU OF INVESTIGATION,**
**UNITED STATES DEPARTMENT OF JUSTICE,**

**Defendants.**

**Case No. 25-795**


**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

**COMPLAINT FOR DAMAGES & INJUNCTIVE & DECLARATORY RELIEF**

Plaintiffs Cynthia Price aka Cynthia Ballenger and Christopher Price, by and

through counsel, brings this action against the United States of America for

violations of the Federal Tort Claims Act ("FTCA") and the United States Federal

Bureau of Investigation ("FBI"), and the United States Department of Justice

("DOJ") for violations of the Privacy Act of 1974.  In support, Plaintiffs state as

follows:


**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to:

   a. **28 U.S.C. § 1331**, because this action arises under the Constitution and

laws of the United States, specifically the Privacy Act of 1974, 5 U.S.C. § 552a, and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680;

b. **28 U.S.C. § 1346(b)**, which grants jurisdiction over civil actions against the United States for money damages under the Federal Tort Claims Act;

c. **5 U.S.C. § 552a(g)(5)**, which grants jurisdiction over claims brought under the Privacy Act of 1974;

d. **28 U.S.C. § 2201**, which authorizes declaratory relief in cases of actual controversy between the parties.

2. Venue is proper in this judicial district under **28 U.S.C. § 1402(b)** because the acts and omissions giving rise to Plaintiffs' claims occurred in substantial part within the District of Columbia. Specifically, the conduct of the Federal Bureau of Investigation and the Department of Justice—including the improper acquisition, handling, dissemination, and use of Plaintiffs' private information—occurred within the District of Columbia.

3. The United States has waived sovereign immunity for claims under the Privacy Act of 1974, 5 U.S.C. § 552a(g), and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2674, to the extent applicable.

**PARTIES**

4. **Plaintiffs**: Cynthia Price and Christopher Price, residents of Washington County, Maryland. In the criminal litigation described below Cynthia Price was referenced as Cynthia Ballenger.

5. **Defendant United States of America**: Sued under the FTCA.

6. **Defendant FBI**: Responsible for the unlawful disclosure and mishandling of private communications and a defendant sued under the Privacy Act.

7. **Defendant DOJ**: Responsible for unlawful disclosure, mishandling of information and misusing improperly disclosed information and a defendant sued under the Privacy Act.

**FACTUAL ALLEGATIONS & BACKGROUND**

**PRESENTATION OF CLAIM UNDER FTCA U.S.C. § 2675(a)**

8. Plaintiffs submitted administrative claims under the FTCA to the FBI and DOJ, seeking damages for the wrongful disclosure and mishandling of private information in letters dated December 1, 2023.  The FBI letter was received by the FBI on December 8, 2023 and the Prices believe the DOJ letter was received at about the same time. In terms of monetary damages the amount stated was $90,000 allocated at $45,000 for each Cynthia Price and Christopher Price.

9. The Prices are seeking more damages under the FTCA due to additional harm from the particular incarceration experience of Cynthia Price, the

impact of the separation of Cynthia, who was primary caregiver and patient navigator during Mr. Price's Stage IV cancer and Stage IV cancer treatment, and additional emotional distress. There was further impacts on the business of Christopher Price.  The impact was further increased by the ongoing misconduct of the defendants and ongoing violation of rights through the appellate process. The Privacy Act claim is unaffected by the letters which where specific to FTCA.

10. The FBI did not respond to the letter.  DOJ forwarded the letter to FBI and sent a letter indicating this point to Plaintiff's counsel in February 2024. At this point the Prices have satisfied the requirement of 28 U.S.C. 2675(a) by presenting the claim to the United States by sending the letters to the FBI and DOJ. While there has been no final denial by the agency in writing, the two agencies have effectively failed to address the issue administratively and the Prices are justified in proceeding against the United States under the FTCA in this complaint.  There is no analogous pre-requisite under the Privacy Act.

**RELATIONSHIP TO STATUTE OF LIMITATIONS UNDER FTCA AND PRIVACY ACT**

11. **Initial Awareness:** Plaintiffs filed their administrative claim with the relevant agencies on December 1, 2023, within the two-year statute of limitations for claims under the Federal Tort Claims Act and the Privacy Act. While Plaintiffs were aware of certain issues prior to the trial, such as the 30-

day limitation under the Stored Communications Act (SCA), the full scope of

the violations and the failure to comply with the search warrant's segregation

and filtering requirements was not fully realized until trial and after. Prior to

trial, Plaintiffs had no definitive understanding of how the court would rule

on the motion to suppress or whether the government would acknowledge the

full extent of its misconduct. The court ruled on the motion to suppress

minutes before starting the trial. The Plaintiffs were aware that the FBI had

obtained Facebook data beyond the statutory 30-day window, a violation of

the SCA, but the government's conduct in handling the evidence was not fully

disclosed or understood until the trial itself." Moreover, the issue

12. **Discovery of the Violations During and After Trial:** "During the trial on

March 21 and 22, 2023, the full extent of the violations became clear, as the

government's conduct during the trial revealed the failure to comply with the

explicit requirements of the search warrant. Specifically, the government

initially represented in its opposition to the motion to suppress that it had

followed the required two-step filtering process. However, during the trial

and in subsequent filings, the government's actions and shifting statements

contradicted these earlier representations. The use of improperly obtained

evidence for purposes beyond authentication, as well as the contradictions in

the government's statements regarding compliance with the segregation

process, exposed the failure to properly segregate and filter the evidence.

Prior to trial, Plaintiffs did not have definitive knowledge of the government's

misrepresentations or its failure to segregate the evidence as required by the search warrant. It was only during trial and in later filings that the Plaintiffs discovered that the government had used evidence outside the scope of the warrant, which violated their privacy rights."

13. **Triggering of Statute of Limitations:** Therefore, under the discovery rule, the statute of limitations began to run from the trial and subsequent filings, when these violations and contradictions were clearly exposed. The Plaintiffs could not have reasonably discovered the full scope of the misconduct until these misrepresentations and violations became apparent in the government's conduct at trial and in later filings. As a result, the filing of this complaint is timely, as the full nature of the violations was only revealed through the government's actions during the trial, which directly contradicted their earlier representations in opposing the motion to suppress.

## CERTAIN PROCEDURAL BACKGROUND ON THE SEARCH WARRANT APPLICATION AND INITIAL DISTRICT COURT ACTIONS

14. Plaintiffs will be referring to arguments, motions, briefs, and other issue arising from a criminal trial against the Prices, styled United States v. Ballenger.  Many references are found in the Appellate Briefs and Related Appendix (Appellate App.) to the opening brief.  Many of the references to the trial and motions can be found in the Appellate Appendix and this complaint provides cross-references where available.

15. On or about November 7, 2022, FBI Special Agent Jeffrey Belcher, under Fed. R. Crim. P. 41(c), and citing the Stored Communications Act (SCA), 18

U.S.C. § 2701 et seq. as authority, sought and obtained a search warrant for evidence of a crime and contraband, fruits of crime, or other items illegally possessed from Facebook, Inc. as relates to Plaintiffs' Facebook accounts. See Document 81-3 in United States v Ballenger, Case 1:21-cr-00719 (Ballenger Case) filed February 12, 2023.

16. On February 13, 2023, the Prices filed a motion to suppress information under or derived from the Facebook search warrant on a number of grounds. *See* Ballenger Case Motion to Suppress (Doc. 81 and Memorandum in Support of Motion to Suppress (Doc. 81-2), filed February 13, 2023. (Appellate App. 55-76). The government responded in opposition (Ballenger Case Doc. 85) on February 18, 2023, and the Prices provided a reply (Ballenger Case Doc. 86) on February 22, 2023. Minutes before the start of the trial on March 21, 2023, Chief Judge Boasberg dismissed the motion to suppress without written opinion.  The trial was a bench trial from March 21-22, 2023.

**THE FBI'S FAILURE TO DISCLOSE TO THE MAGISTRATE AND COMPLY WITH THE 90-DAY LOOK BACK TIME LIMITATION UNDER THE STORED COMMUNICATION ACT (SCA)**

17. As argued in the Price's Memorandum to Support Motion to Suppress, the application failed to disclose key legal restrictions imposed by the SCA including its temporal limitations on obtaining stored electronic communications without additional legal process, as set out in 18 USC 2703(f) and 2703(c)(1).

18. Specifically, the FBI application sought Facebook records dating back to November 2020, far beyond the 90-day statutory window permitted under the SCA for the relevant category of communications. The warrant was, thus, based on a misrepresentation to the magistrate. There was misapplication of law and an overbroad request that exceeded lawful statutory authority. *See* Appellate Brief in USCA Case # 23-3198 Document # 2039213) (App. Brief) at 95-96.  Pretty much none of the Facebook evidence presented at trial would have been part of a search warrant that respected the SCA scope limitations. The failure to properly comply with these statutory limitations resulted in the unlawful acquisition and disclosure of Plaintiffs' private information resulting in the damages described in this complaint.

**THE FBI UNILATERALLY SOUGHT A SEARCH WARRANT COVERING 18 U.S.C. §§ 1752(a)(1) AND (2) WHICH WAS OUTSIDE OF FBI INVESTIGATION AUTHORIZATION**

19. The FBI misrepresented its authority to the magistrate by failing to identify it had no authorization for 18 U.S.C. §§ 1752(a)(1) and (2). Since the search warrant Section II includes these areas, the warrant was broader than the FBI could properly request. *See* Memorandum in Support of Motion to Suppress (Doc. 81-2) at 17-19. (Appendix App. at 71-73)  Fed. Rule Cr. P. 41(a)(2)(C) states that a Federal law enforcement officer means a government agent (other than an attorney for the government) who is engaged in enforcing the criminal laws and is within any category of officers <u>authorized</u>

by the Attorney General to request a search warrant.  (emphasis added).

Also, 28 CFR 0.85 (a) says the Director of the FBI shall:

> Investigate violations of the laws, including the criminal drug laws, of
> the United States and collect evidence in cases in which the United
> States is or may be a party in interest, except in cases in which such
> responsibility is by statute or otherwise exclusively assigned to
> another investigative agency. (emphasis added)

20. Pursuant to the Department of Justice (DOJ) Manual and applicable inter-
agency memoranda of understanding, the United States Secret Service holds
primary jurisdiction over investigations involving violations of 18 U.S.C. §
1752, which pertains to unauthorized entry into restricted areas secured by
the Secret Service, including areas protected during the events of January 6,
2021. The application and search warrant ("Search Warrant") are stated as
pursuant to 18 U.S.C § 2703 for investigation of violation of 18 U.S.C. §§
1752(a)(1) and (2) and §§ 5104(e)(2)(D).

21. Notwithstanding this jurisdictional designation, the United States Federal
Bureau of Investigation (FBI), claimed investigative authority over Plaintiffs'
alleged § 1752 violations in the Search Warrant, with no evidence of
coordination with the Secret Service who is assigned under the manual
regarding investigating potential 1752 violations.  This improper assertion of
jurisdiction led to misrepresentation to the magistrate who agreed to a

broader search warrant.  This led to an unjustified search of the Plaintiffs'
private records, exacerbating the violation of their privacy and contributing
to the ongoing harm

**THE SEARCH WARRANTS WERE EXTREMLY BROAD AND RELIED
ON A CRITICAL TWO-STEP FILTERING STRUCTURE**

22. Section I of Attachment B of the search warrant application identifies
information to be disclosed by Facebook, Inc to cover the period from
November 3, 2020 to November 7, 2022 and to cover an extremely broad
range of personal and private information. The sweeping nature of the data
request far exceeded what was necessary for the investigation, encompassing
a vast amount of personal and irrelevant data that should not have been
disclosed under the law.

23. Section I (a) describes the initial information that Facebook, Inc. was
required to disclose and included but not limited to "messages, attachments,
draft messages, posts, chats, video calling history, "friend requests,
discussions, recordings, images, or communications of any kind sent to and
from the Account. This included the internet Protocol ("IP") addresses
associated with each message or other communication and date and time.
Section I (b) included all photos and videos uploaded and all photos or videos
uploaded in which the Account has been "tagged". Section (c) included
subscriber records and login history and full name, physical address,
telephone numbers birthdate, security questions and passwords, and other

personal identifying information, records of session times and durations. This included location information by the long-in IP addresses associated with session times and dates. Section I(d) includes address books, contact and "friend" lists, calendar data, and files; profile information; "News Feed" information; "Wall" postings; Notes; groups and networks of which the Account is a member; future and past event postings; rejected "friend" requests and blocked users; status updates (including relationship status updates); comments; gifts; "pokes"; "tags"; the account's usage of the "like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked"; searches performed by the Account; privacy settings, including privacy settings for individual Facebook posts and activities; information about the Account's access and use of Facebook applications; and the Account's access and use of Facebook Marketplace. Section I (e) includes all "check ins" and other location information. Section I (g) includes all records pertaining to devices associated with the Account. Section I (h) includes all information held by Facebook, Inc. related to the location and location history of the Prices including IP addresses, global positioning system ("GPS") information.

As discussed below, the government appears to concede that without filtering sections II and III of Attachment B of the search warrant the above information would be a general warrant and not permissible.

24. Section II of Attachment B of the search warrant application describes all information described in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C. 18 U.S.C. §§ 1752(a)(1) & (2); and 40 U.S.C. §§ 5104(e)(2)(D) & (G) within the boundaries of categories described in II (a)-(f). These are the scope criteria of Section II.

25. Section III of Attachment B of the search warrant application describes the critical procedure:

    The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

    Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

26. It is important to note that a broad exhibit or availability of an exhibit pursuant to the warrant could be used for authentication at trial where necessary and in compliance with the warrant and other rules. That information should be sealed and only used for such purposes. Further review of the broad information set is prohibited absent an order of the Court. Such

an authentication exhibit does not represent an opportunity for the prosecutors, on their own liberty, to search and cull evidence for discussion at trial.

**THE FBI FAILED TO IMPLEMENT, AND THE DOJ PROSECUTORS FAILED TO RESPECT, THE REQUIREMENT OF THE TWO-STEP FILTERING PROCESS TO SEPARATE SECTION II SCOPE ITEMS FROM THE SECTION I DATA DUMP BEFORE THE TRIAL**

27. What became clear at trial was that the prosecutor used as evidence in the public trial, without seal, and for any purpose including cross-examination, the broad 14, 637-page data dump of Cynthia Price's Facebook messenger messages styled Exhibit 308(B). The prosecutor also placed into evidence in the public trial, without seal, 695 pages of Christopher Prices Facebook messenger messages and other information styled as 309(A). The prosecutors operated under no apparent restriction to limit use of these documents for authentication purposes. Plaintiffs agree Exhibit 308A and Exhibit 309 were for authentication purposes.

28. Between the FBI and DOJ prosecutors, the defendants cannot now identify that the segregation and sealing occurred before the criminal trial, or at any time, in violation of the explicit terms of the search warrant and in conflict of representations made to a magistrate and the district court.

29. The Prices raised these issues squarely in the Rule 29 motion for judgement notwithstanding verdict (See and Rule 33 motions. The Prices argued on this basis and what was stated in the motion to suppress that the entire Facebook Search Warrant process is a sham since the government failed to follow the

critical two-step segregation. The Prices asked the Court to provide a hearing
on this issue and establish a record, address privacy concerns and ensure
errors like this do not continue.  The Government opposed this.  The
government in response failed to address the argument that the prosecutions
actions were proof that no segregation had occurred.

30. In its appellate brief the government took the position that the search
warrant did not require the segregation and sealing process to occur before
trial and the prosecutors were free to search and use the full data dump
specifically stating:

> Nor did it violate the warrant procedure that the government did not
> seal off information, which resulted in the full Facebook return being
> admitted into evidence (Appendix cite omitted). The warrant contained
> no time limit for completion of the search the Facebook return, so the
> government's inability to complete the search before trial did not
> breach the warrant procedure.

31. The Prices filed their appellate reply brief (USCA Case # 23-3198 Doc.
2053107) on May 6, 2024 noting that the government's argument is illegal
under the Fourth Amendment and not a credible reading of the search
warrant. The Prices note in the reply brief that, apparently, the government
cannot show it determined and identified what information fell into the
smaller scope of the search warrant provision even to this day.

**THE FBI FAILED TO IMPLEMENT THE PROCEDURE IT SWORE IN
AN AFFIDAVIT TO THE MAGISTRATE AND THE DOJ FALSELY OR
INACCURATELY CLAIMED GOVERNMENT COMPLIANCE WITH
THE SEPARATION REQUIRMENT IN PRE-TRIAL SUBMISSIONS**

32. The two-step process and scope was prepared by the FBI and presented to the magistrate in the application. The FBI either misrepresented the plan to a magistrate or simply ignored the requirement.

33. Pre-trial the government falsely claimed compliance with the two-step process had occurred. In the government's opposition (Doc. to the Prices motion to suppress the government claimed understanding and compliance with the two-step filtering process in the Government Opposition (Doc. 85):

> The purpose of this two-step procedure is not to allow the Government to obtain a general warrant. [*Id.* at14] …The two-step procedure for digital material is a compromise that balances the government's interest in investigating criminal conduct with the target's privacy interests. Here, the FBI did exactly as required when it recovered the defendants' account data from Facebook and reviewed them for material listed in Attachment B. [*Id.* at 5]

These statements were misrepresentations to a court. At no point did the government reserve that the segregation had not been completed. And now, as discussed below, the government cannot identify that the segregation occurred.

**CERTAIN BAD FAITH USE OF UNFILTERED INFORMATION AT TRIAL AND SENTENCING**

34. The prosecutor reached into the 14, 637 page data dump, and started questioning Cynthia on a short private message sequence that neither Cynthia nor Counsel had been show specifically to review. The prosecutor, in

bad faith, tried to state Cynthia Price was sympathetic to an article in cross-examination without showing the specific messages. In fact, when one looks at that page, it is clear that Cynthia explicitly rejected that article. (*See* Screenshot of Page 3933 from Government Exhibit 308B Redacted for Account Numbers in Appellate App. at 118). This bad faith attack and use of a message from the 14, 637 pages of unsegregated Facebook messages for Cynthia Price was used not just in trial but brought forward again during the sentencing.

35. As part of cross-examination, the government questioned Cynthia Ballenger from part of a Facebook message among the 14,637 pages of 308B and not on information presented by Special Agent Belcher in Exhibits 306 or 307. The government portrayed Cynthia Price as sympathetic to a set of Lin Wood statements that included the term "execute" Mike Pence. (Appellate App. At 415). These were not public postings by Cynthia, but messages of Cynthia Price were sent privately to the friend and the messages show the exact opposite of what the Government got away with at trial. Specifically, in the prior post Cynthia Price states: "….sounds like Lin Wood is completely lost it." (Appellate App. at 118). In the specific message, Cynthia says "….not sure why he would be doing that to ruin his credibility." *Id*. At trial, government counsel omitted the language that clearly indicates Cynthia Price disagreed with him. (Appellate App. at 415-416). Defense counsel objected at trial to the questions, saying the defense did not have the article. (Appellate App. at 417)

**THE GOVERNMENT INCLUDING DOJ FAILED TO ADMIT OR CORRECT THE FUNDAMENTAL ERRORS IN ITS RESPONSE TO THE PRICES' RULE 29 AND RULE 33 MOTIONS**

36. The argument regarding the prosecutor's submissions in violation of the terms of the search warrant and made in bad faith were raised in filings under Rule 29 (Docs 108, 108-1 and 108-2)(Renewed Motion for Judgment of Acquittal)(Appellate App. At 510-552) , and Federal Rules of Criminal Procedure Rule 33(Docs 109, 109-1, 109-2) (Motion for a New Trial and filed with the district court on April 18, 2023. (Appellate App. at 553-565).

37. The government response to Rule 29 and Rule 33 motions (Doc. 112) was filed on May 9, 2023 (Appellate App. at 566 -580) and the Prices filed a reply (Doc. 115) on May 17, 2023. (Appellate App. 581-596).

38. The district court rejected the Prices' Rule 29 and Rule 33 motions by opinion (Doc. 127) filed on July 18, 2023. (Appellate App. at 597-617)

39. In the Price's rule 29 motion, the Prices had specific arguments that exhibits fell under Section I and not Section II of the search warrant rendering the entire Facebook search warrant process a sham.  The memorandum called out the very failure to meet the section III process in the search warrant.  The Prices also argued that the Court should provide a hearing on this issue and establish a record, address privacy concerns and ensure errors like this do not continue.  Separately, and in addition, in the Rule 33 motion the Prices took on the misleading use of information from the 14, 637 page data dump as related to the Lin Wood Facebook messages. The

government response ignored the argument that the lack of segregation

violated the Search Warrant.  The government ignored the opportunity, and

thus, argued against a hearing on the segregation issue or to address privacy

concerns.

## THE GOVERNMENT CONTINUED AND ADDED TO ITS SEARCH WARRANT, BRADY, AND MISREPRESENTATION MISCONDUCT AT SENTENCING

40.  This pattern of misconduct continued during sentencing, when prosecutors

again relied on improperly disclosed materials and discredited allegations,

despite further objections from Plaintiffs' counsel. In the government

sentencing memorandum, the government again pointed to the issue the Lin

Wood article private message the government culled from the 14, 637 pages

which was a violation of the Search Warrant. The prosecutors stated:

"Despite Facebook records showing that she posted an article about executing

Mike Pence, Ballenger denied doing so." (From government sentencing

memorandum) (Doc. 133) at 9-10. This particular sentence added to the

malfeasance with critical misrepresentations.  First, the episode had been

exposed as questions based on violation of the Search Warrant.  Second, the

episode had already been exposed as a violation of Brady, since the

government had mischaracterized and failed to identify the evidence on the

same page clearly indicating Cynthia objected to Lin Wood's position. Third,

in the sentencing memorandum claims Cynthia posted the article when, in

fact, the references are to a short, private exchange between two people under messenger.

41. Defendants' failure to take corrective action at any point, including after repeated warnings, and the government doubled down with its malfeasance underscores an institutional and systemic failure to safeguard Plaintiffs' privacy rights.

**THE GOVERNMENT FAILED TO ADMIT OR CORRECT OR RESPOND TO THE PRICE'S MOTION FOR RELEASE PENDING APPEAL IN DISTRICT COURT REGARDING THE SEARCH WARRANT ISSUES**

42. The government was once again confronted with the Search Warrant issues in the Prices Motion for Release Pending Appeal filed November 12, 2023 (Doc. 152) where the Prices specifically argued the conduct of the FBI and prosecution in violating the terms of the search warrant and the FBI for putting an improper application before the magistrate. The motion covered 1) the scope limitation in the Stored Communication Act; 2) that the complete data dumps as evidence violated the Section III Government Procedures for Warrant Execution and proof the operation was a sham; and 3) the specific malfeasance flowing from the 14, 637 pages and the Lin Wood questioning. The government did not respond to the motion at all, once again failing to admit or correct when such admission would have prevented Cynthia Ballenger from going to Prison during the appeal.

**SCOPE OF ILLEGAL ACQUISITION AND DISCLOSURE**

43. Evidence introduced at trial from the Facebook returns included Government Exhibits 306 and 307 were introduced through the FBI witness. Government exhibit 308B was later introduced and included in conjunction with 308A. 308A was an authentication statement and contained no private information. 308B, however, was 14, 637 pages of Cynthia Ballenger Messages and Information). Again, Exhibit 309 was an authentication statement and contained no private information.  Exhibit 309A, however, was 695 pages of Christopher Price private messages and private information)(Government video exhibits 300, 301, and 302 are listed as from the Facebook search and were included among the messages. References to Facebook evidence is at least Appellate App. at 266 -271,290-293, 310-317, 322, 324, 327-329, 340-344, 357, 402-403, 408-411, 415-420, 424-428, 432-434, 447, 448-449, and 457-458.

44. The scope of the evidence from the Facebook search warrant operation placed into a public trial not the product of a legal search warrant operation.  This information included hundreds of private conversations, friends lists, friends phone numbers, friends emails, certain financial transactions (Chris 262) and related #s, certain financial aid and loan information and list of groups including medical support, political discussion, political support, political group affiliations There was substantial discussion of First Amendment activity (mostly on Cynthia Ballenger discussion) including discussion of attendance at certain political events other than January 6th, trip details  to

other places,  insurance and policy information, billing information. IP

addresses and time associated with the account, a list of all groups a member

is part of at the time of production which included medical support groups,

political groups and forums.

45. The district court issued judgments and sentencings on October 3, 2023 for

both Cynthia (Doc. 138) and Christopher (Doc. 140)(Appellate App. at 1-6).

Cynthia was convicted on four misdemeanors for violations of and sentenced

to 4 months incarceration, nine months supervised release and $570 in a

combination of penalty fees and restitution. Christoper was convicted on the

same four misdemeanors and sentenced to 45 days incarceration, nine

months of supervised release and $570 in a combination of penalty fees and

restitution.

**THE GOVERNMENT TOOK INDEFENSIBLE POSITIONS ON
APPEAL, INCLUDING IN A MOTION FOR RELEASE PENDING
APPEAL, AND FAILED TO ADMIT OR CORRECT FUNDAMENTAL
ERRORS**

46. The Prices both filed notices of appeal (Docs. 148 and 149) on October 26,

2023. On February 7. 2024, the Prices filed their appellate brief in the D.C.

Circuit  (USCA Case # 23-3198 Doc. 2039213) and Appendix I & 2 (USCA

Case # 2039217). The Prices filed an appellate motion for release pending

appeal on March 5, 2024 *(See* USCA Case # 23-3198 Doc. 2043574). The

government response to the appellate release pending appeal was filed on

March 12, 2024 (USCA Case # 3198 Doc. 2044550). The Court of Appeals

rejected the motion on March 15, 2024 (USCA # 23-3198 Doc. 2045033). The
government brief in response was filed on April 15, 2024 (USCA Case# 23-
3198 Doc. 2049671).  The Prices filed their appellate reply brief on May 6,
2024 (USCA Case #23-3198 Doc. 2053107). Appellate argument occurred on
September 16, 2024, but no final opinion on the appeal was issued.

47. In the appellate response to the motion to release pending appeal, the
government took a new position stating:

> …this does not reflect a failure to comply with the warrant procedure.
> The government was unable to complete the scoping before prior to
> trial but the warrant contained no time limit for completion…

The government further took the position that the good faith exception
applied under *United States* v, *Leon*, 468 U.S. 897, 918 (1984).

48. In the government's appellate response brief at 86 states "[t]he government
was unable to complete scoping prior to trial, but the warrant contained no
time limit for completion."  The government made no attempt to address the
other issues including that the Stored Communication Act had scope
limitations, thus, simply ignoring the misrepresentation and errors which
formed  misrepresentation to the magistrate and a defective search warrant.

**EFFECT OF CRIMINAL CASE AND VACATUR ON CIVIL CLAIMS**

49. On January 20, 2025, President Donald J. Trump issued an Executive Order
Regarding Certain Offenses Relating to the Events at Or Near the United

22

States Capitol on January 6, 2021. On January 29, 2025, the Government

filed Appellee's Unopposed Motion to Vacate Convictions and Remand for

Dismissal (USCA Case # 23-3198 Doc. 2097286) based in part on the

Executive Order and the status of the case as being on appeal. On February

4, 2025, the D.C. Circuit approved the motion to vacate and vacated the

judgment of the district court and remanded with instructions to dismiss the

cases as moot for both Cynthia Ballenger (Price)(USCA Case# 23-3198 Doc.

2098833) and Christopher Price)(USCA Case# 23-3199 Doc. 2098834). The

DC Circuit specifically stated:

> **ORDERED** that the judgment of the district court be vacated and
> these cases be remanded with instructions to dismiss the cases as
> moot. See United States v. Schaffer, 240 F.3d 35, 37–38 (D.C. Cir.
> 2001) (en banc).

The district court dismissed the case as moot by minute order February 5,

2025.

50. Plaintiffs' claims in this lawsuit are not precluded by the prior criminal trial

because:

A.      The criminal trial did not involve determinations of liability under the

Federal Tort Claims Act (FTCA) and Privacy Act of 1974 and the vacutur

does not override Plaintiffs separate civil claims

B.      The vacatur of the judgment means judicial findings from the criminal

case are vacated and there is a fresh slate, as if the case had not been

brought.

C.    The vacatur of Plaintiffs' convictions does not absolve Defendants of liability. Plaintiffs suffered wrongful imprisonment, reputational harm, and financial damages as a direct result of Defendants' misconduct.

D.    The vacatur does not remedy the harms citied in this complaint from the misconduct of Defendants as can be established under the FTCA and Privacy Act

**DOJ RESPONSIBILITIES UNDER DOJ'S OWN RULES OF**

51. The DOJ Rules of Professional Conduct set forth standards governing the behavior of federal prosecutors, emphasizing candor toward the tribunal, fairness to opposing parties, and a prosecutor's duty to correct errors. In this case, the government's conduct at multiple stages—trial, Rule 29, Rule 33 motions, and the Court of Appeals—violated these standards, leading to prolonged harm for the plaintiffs. See Rule 3.3 Candor Toward Tribunal. 3.8 (duty of prosecutor to make timely disclosure to the defense or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, and to the tribunal all unprivileged mitigating information known to the prosecutor. (3.1 Meritorious Claims and Contentions) A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. 3.3(a)(1) A lawyer shall not knowingly:

    (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

    (2) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

(c) The duties stated in paragraphs (a) and (b) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

52. DOJ Manual 9-5.000, Section C1 (Exculpatory Material): Under C1, the prosecution is required to disclose any material that is exculpatory and could negate the defendant's guilt or reduce their culpability. The government's failure to segregate the Facebook data dump, which contained irrelevant personal information, led to the improper admission of evidence that should have been excluded under the Fourth Amendment and Privacy Act. This failure to disclose the nature of the evidence, or the improper handling of it, denied the defense the ability to challenge its use, leading to wrongful incarceration and emotional distress for the plaintiffs.

DOJ Manual 9-5.000, Section C2 (Impact on Evidence Reliability): C2 requires disclosure of any evidence that casts substantial doubt upon the accuracy of the evidence used to prove an element of the crime. The failure to segregate irrelevant or privileged data from the Facebook search cast doubt on the reliability of the evidence. The misleading representations to the court about the nature of the evidence and the failure to correct the errors resulted in the continuation of the wrongful conviction and misleading statements during the appeal.

DOJ Manual 9-5.000, Section D3 (Impeachment and Sentencing Factors): According to D3, the prosecution must disclose evidence that could cast doubt on sentencing factors or impeach the credibility of witnesses. In this case, the improperly handled Facebook data became part of the evidence relied upon during sentencing, and the failure to disclose the flaws in its collection and use meant that sentencing was influenced by flawed evidence. The improper use of evidence in this way constitutes a violation of impeachment disclosure obligations, which directly impacted the fairness of the plaintiffs' trial and sentencing.

53. Justice Manual 9-5.001-Policy Regarding Disclosure of Exculpatory and Impeachment Information under paragraph (B) states

> Constitutional obligation to ensure a fair trial and disclose material exculpatory and impeachment evidence. Government disclosure of material exculpatory and impeachment evidence is part of the

constitutional guarantee to a fair trial. *Brady v. Maryland*, 373 U.S.

83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972).

Under paragraph C(2) (Additional impeachment information that must be

disclosed) A prosecutor must disclose information that either casts a

substantial doubt upon the accuracy of any evidence—including but not

limited to witness testimony—the prosecutor intends to rely on to prove an

element of any crime charged, or might have a significant bearing on the

admissibility of prosecution evidence. This information must be disclosed

regardless of whether it is likely to make the difference between conviction

and acquittal of the defendant for a charged crime.

Under C (4) (Cumulative impact of items of information)  While items viewed

in isolation may not reasonably be seen as meeting the standards… several

items together can have that effect.

Under D.  Due process requires that disclosure of exculpatory and

impeachment evidence material to guilt or innocence be made in sufficient

time to permit the defendant to make effective use of that information at

trial. *See, e.g. Weatherford v. Bursey*, 429 U.S. 545, 559 (1997); *United States

v. Farley*, 2 F.3d 645, 654 (6th Cir. 1993). In most cases, the disclosures

required by the Constitution and this policy will be made in advance of trial.

**THE FBI AND DOJ'S OBLIGATION TO COORDINATE AND ENSURE
COMPLIANCE**

54. The FBI and DOJ have a shared responsibility to coordinate their actions in accordance with the terms of the search warrant and ensure that all representations made to the court are accurate and truthful. The FBI's failure to properly filter the data before presenting it to the prosecutor indicates that there was a lack of coordination between the FBI and the DOJ regarding the data handling process.

Both agencies had an obligation to communicate clearly and ensure that the prosecutor and court were not misled about the status of the filtering process. If the FBI misrepresented its actions, the DOJ was equally responsible for ensuring that the evidence presented was properly filtered and in compliance with the warrant. The failure to coordinate between the agencies compounded the harm.

The Department of Justice, as the primary legal body representing the government, has a responsibility to adhere to the highest ethical standards. The Rules of Professional Conduct—including the duty of candor toward the tribunal, the obligation to disclose exculpatory material, and the safeguarding of sensitive information—require that the DOJ act with integrity and transparency. These obligations are rooted in ensuring fairness in legal proceedings and preventing the misuse of power.

**CYNTHIA BALLENGER SPENT SUBSTANTIAL TIME IN PRISON FOR MINIMAL CONDUCT AFTER PROCESS CHARACTERIZED BY DEFENDANTS MISCONDUCT**

55. It is important to note that the Prices' conduct on January 6, 2021 was minimal and non-threatening. At no point did they engage in disruptive, violent, or unlawful behavior. The Prices' actions on January 6, 2021, involved walking through a door, walking down a hallway for about a minute, turning around, and standing in line to exit for approximately five and a half minutes. This is all on government closed circuit video and there is no dispute on the matter. There was no pushing, resistance, or interference with law enforcement. There was no reason for two-years of the most intrusive Facebook data. Despite this, the government's use of improperly obtained evidence to prosecute them highlights the disproportionate nature of the charges. The Prices' actions at the Capitol were peaceful, and the government's treatment of them—particularly the handling of evidence in violation of the search warrant's terms—was both unjustified and overblown.

56. Cynthia Price was ultimately incarcerated despite her minimal conduct, a result of the government's failure to follow proper procedures and the unlawful handling of evidence. Cynthia reported to the Secure Female Facility at the Hazelton Federal Correctional Institute on March 19, 2024, where she remained until her release on July 3, 2024. During this time, the impact on her personal and professional life was profound. Christopher Price's health, too, suffered from the emotional distress of his wife's incarceration, including complications related to his Stage IV cancer. The Prices' experience underscores the far-reaching consequences of the

government's actions, which were not in proportion to their conduct, and the ongoing harm caused by the government's refusal to correct its mistakes.

57. During the pendency of the criminal proceedings, Christopher Price was diagnosed with Stage IV cancer. The district court requested medical updates regarding his condition and delayed his reporting date such that Chris did not report.  The district court never formally removed the possibility of imprisonment, leaving the threat of incarceration hanging over Christopher Price, causing significant emotional distress for both Plaintiffs.  The case and the possibilities is sentencing resulted in Christopher and his business partner dissolving their partnership.

58. The government's continued reliance on false and misleading arguments during and after trial exacerbated the reputational, emotional, and financial harm suffered by Cynthia Price and Christopher Price.

59. Despite the misconduct the DOJ continued to advocate that Cynthia Price, the primary care giver and patient navigator, and Christopher Price, who had Stage IV cancer and treatment go to prison and the worst time.

60. The wrongful acts of the FBI and DOJ, individually and collectively, constitute independent bases for liability under both the FTCA and the Privacy Act.

**LOSS OF LIBERTY AND CHILLING EFFECT**

61. As a result of the wrongful conviction and the government's unlawful actions, Plaintiffs have experienced a **chilling effect** on their ability to communicate freely. Travel freely, and demonstrate.  Plaintiffs are now fearful that their future private communications will be monitored, intercepted, or disclosed without consent, causing a lasting emotional burden and hindering their ability to engage in open dialogue or participate fully in their communities and careers. The Prices have been monitored in travel and effectively surveilled for a two-year period.  Their friends information has been disclosed, there initial Facebook accounts shut down and they fear they have suffered in their contacts.

## CAUSES OF ACTION

## COUNT I – FEDERAL TORT CLAIMS ACT (Intrusion Upon Seclusion)

62. Plaintiffs incorporate all preceding paragraphs.

63. "The tort of intrusion upon seclusion has three elements: (1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination, . . . (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns, . . . (3) that would be highly offensive to an ordinary, reasonable person." *Wolf v. Regardie*, 553 A. 2d 1213, 1217 (D.C. 1989) (internal citations omitted).

64. Defendant FBI, acting within the scope of employment, intentionally intruded upon Plaintiffs' private digital communications by investigation or examination. The malfeasance of the FBI was not a one-off error. Rather the FBI failure was systematic, ignoring the law and direct safeguards. The malfeasance was prolonged and not corrected at any stage from search warrant application, to evidence at trial, through appeal. Defendant FBI failed to communicate important limitations to the magistrate when obtaining the search warrant and failed to properly implement the segregation structure of the search warrant make this investigation legally invalid an satisfying elements of the tort of inclusion by seclusion. Defendant FBI acted as a witness and presented evidence into the trial despite that evidence not being the product of a final and proper segregation process.

65. There is an expectation of privacy for the Prices under the Facebook messenger service and other private information collected by Facebook.

66. Defendant FBI proposed the segregation structure which was critical to obtaining the search warrant and had full knowledge of the requirement and necessary operation.

67. DOJ, through its employees, further intruded upon Plaintiffs' privacy by reviewing, retaining, using in a public trial, and publicly disclosing improperly obtained private messages.

68. The FBI and DOJ's actions violated Plaintiffs' reasonable expectation of privacy

69. The invasion into the private messages and information of the Prices would be highly offensive to a reasonable person. The offensiveness arises from the fact that the government accessed such a large, sweeping scope of private communications without proper filtering, in violation of the search warrant. This not only violated the plaintiffs' privacy but also undermines the legal process and safeguards meant to protect personal data. The scale and sensitivity of the data in both steps of the search warrant required proper administration and defendants failed every step of the way.

70. Defendant FBI, acting within the scope of employment, intentionally intruded upon Plaintiffs' private digital communications by investigation or examination. This intrusion was not an isolated error but part of a systematic failure to comply with the law. The FBI's misapplication of the search warrant, coupled with its failure to implement the mandated two-step filtering process, turned what should have been a limited, lawful investigation into a broad and offensive invasion of Plaintiffs' privacy. The scale and sensitivity of the information obtained—14,637 pages of Facebook messages from Cynthia Price and 695 pages from Christopher Price—would shock any reasonable person.

71. What makes this intrusion even more offensive is the continuing misrepresentation by both the FBI and the DOJ regarding their actions. Despite the clear violation of privacy laws and the explicit safeguards outlined in the search warrant, the government has failed to admit its errors

or take corrective action. Rather than acknowledge its misconduct, the government persisted in defending its improper actions, even to the point of pursuing a 4-month jail sentence for Cynthia Price for a minor, peaceful act of protest. The failure to correct the record, admit non-compliance, or take responsibility for the mishandling of sensitive data underscores the offensive nature of their conduct. The government's refusal to uphold the law or make amends for its actions is not only an abuse of power but a deliberate denial of justice, exacerbating the harm done to the plaintiffs and continuing to tarnish their reputations and lives.

72. Under D.C. common law, intrusion upon seclusion constitutes a tortious invasion of privacy under the common law tort of intrusion upon seclusion, recognized under D.C. law and actionable under the FTCA.

73. As a direct result of the unlawful actions of the FBI and DOJ, Plaintiffs suffered damages including wrongful convictions, emotional distress, reputational harm, economic loss and continued consequences as outlined in the Prayer for Relief (Section A Relating to FTCA Claims).

74. Plaintiffs initially submitted administrative claims under the FTCA, requesting $90, 000 together allocated as $45,000 per Plaintiff. However, the full extent of harm was not fully apparent at the time of the administrative claim. Specifically, the emotional distress **caused by** Cynthia Price's incarceration, the separation between the Plaintiffs during her imprisonment, and the disruption of her role as primary caregiver **and**

patient navigator **for** Christopher Price during his Stage IV cancer and treatment were not fully known. This separation caused significant emotional and psychological toll on both Plaintiffs and had a direct impact on Christopher Price's ability to run his business**.** Additionally, the harm was compounded by the continuing misconduct **of the** defendants during the appellate process, where the wrongful actions and violations of the Plaintiffs' rights persisted. As such, Plaintiffs seek higher compensatory damages, reflecting the newly discovered harm caused by the prolonged legal uncertainty, the separation, and the ongoing violations of their rights, which were not foreseeable when the administrative claim was filed.

## COUNT II – FEDERAL TORT CLAIMS ACT (Public Disclosure of Private Facts)

75. Plaintiffs incorporate all preceding paragraphs.

76. The FBI improperly disclosed Plaintiffs' private Facebook messages, including sensitive personal communications that were supposed to be sealed under the warrant.  Indeed, without a valid segregation step, none of the information should have been sent to the prosecutors office and should not have disclosed in a public trial.

77. The DOJ, despite receiving this improperly disclosed information, failed to safeguard the materials and further disclosed them by introducing them as evidence in violation of Plaintiffs' privacy rights.

78. This disclosure was highly offensive and not of legitimate public concern.

79. Under D.C. common law, public disclosure of private facts is a tortious invasion of privacy.

80. As a result, Plaintiffs suffered harm and seek damages under the FTCA.

81. Public disclosure includes and is not limited to all public disclosure in the transcripts, memorandum, briefs and opinions that derived from the illegal search warrant operation.

82. As a direct result of the unlawful, willful and intentional actions of the FBI and DOJ, Plaintiffs suffered damages including wrongful convictions, emotional distress, reputational harm, economic loss and continued consequences as outlined in the Prayer for Relief (Section A Relating to FTCA Claims).

83. Plaintiffs initially submitted administrative claims under the FTCA, requesting $90,000 total and $45,000 per Plaintiff. However, as described in Count I and Paragraph 9, the full scope of the harm was not fully known at the time of the administrative claim. Specifically, the emotional distress caused by Cynthia Price's incarceration, the separation between the Plaintiffs during her imprisonment, and the disruption of her role as primary caregiver for Christopher Price during his Stage IV cancer and treatment were not fully understood or foreseeable. This separation not only caused significant emotional distress but also directly impacted Christopher Price's ability to run his business. The harm was further compounded by the continuing

misconduct of the defendants during the appellate process, where the
wrongful actions and violations of Plaintiffs' rights continued. Therefore,
Plaintiffs seek higher compensatory damages under the FTCA, reflecting the
newly discovered harm caused by the prolonged legal delay, the separation,
and the ongoing violations of their rights, which were not foreseeable when
the administrative claim was filed.

## COUNT III – PRIVACY ACT OF 1974 (Unauthorized Disclosure – 5 U.S.C. § 552a(b))

84. Plaintiffs incorporate all preceding paragraphs.

85. The Privacy Act, 5 U.S.C. § 552a(b), prohibits federal agencies from disclosing
records maintained in a system of records without the written consent of the
individual to whom the record pertains, unless an exception applies.

86. A *System of Records* (SOR) is defined in 5 U.S.C. § 552a(a)(5) as a group of
records under the control of an agency from which information is retrieved by
the name of the individual or by some identifying number, symbol, or other
identifying particular assigned to the individual. The records related to the
Facebook Search Warrants are maintained in a system of records.

87. None of the exceptions apply in this case and specifically the term
"authorized by law" under 552a(b)(7) inherently means within the scope of a
valid search warrant and its limitations in the instant case. Further under
552a(b)(1), officers and employees have no need and no legal basis for
information obtained in violation of the a valid search warrant operation in

the "performance of their duties." Nor was their an order of a court to use or transfer the information under 552a(b)(12).

88. Defendant Federal Bureau of Investigation (FBI) violated § 552a(b) by unlawfully disclosing Plaintiffs' private electronic records to the Department of Justice (DOJ) prosecution team beyond the scope of the search warrant's authorization and limitations.

89. Release of information as evidence in public court is release to a "person" or multiple persons.

90. Defendant DOJ violated § 552a(b) by further disclosing these private records in open court, making them publicly available, despite a knowing failure that the FBI and federal government had failed to implement the warrant's explicit filtering and sealing requirements.

91. Defendant FBI violated § 552a(b) by further disclosing evidence from the Facebook Search warrant without following the procedure required by the search warrant.

92. The law enforcement exemptions under 5 U.S.C. § 552a(j) and (k) do NOT apply to improper disclosure claims. Even if records are maintained in a system designated for law enforcement purposes, agencies cannot use exemptions to shield themselves from liability under § 552a(b) for unauthorized disclosures. *See Tijerina v. Walters*, 821 F.2d 789 (D.C. 1987); *Doe v. F.B.I*, 936 F.2d 1346 (D.C. Cir. 1991).

93. The FBI's failure to comply with the search warrant's filtering and segregation requirements resulted in an unlawful disclosure of Plaintiffs' private communications to the DOJ. The DOJ then intentionally and willfully compounded the violation by using these improperly obtained records in open court.

94. Defendant FBI violated this provision by improperly disclosing the private Facebook messages of Cynthia Price to Defendant DOJ without first filtering out non-relevant materials, as explicitly required by the search warrant.

95. Each instance in which Defendants disclosed unsegregated records to unauthorized recipients—including but not limited to each exhibit introduced into the trial record, and each internal disclosure to the prosecutorial team prior to filtering—constitutes a separate violation of 5 U.S.C. § 552a(b).

Plaintiffs reserve the right to identify and enumerate additional violations through discovery. At a minimum, Defendants' disclosure of 14,637 pages of Facebook communications/information of Cynthia Price and 695 pages of Facebook communications/information of Christopher Price, without proper filtering or segregation, resulted in thousands of discrete Privacy Act violations, for which Plaintiffs seek statutory and actual damages under 5 U.S.C. § 552a(g)(4)

96. Defendant DOJ further violated this provision by making additional unauthorized disclosures, including but not limited to:

a. Publicly filing non-relevant Facebook messages in pre-trial submissions without proper safeguards;

b. Introducing unfiltered Facebook messages as evidence during trial in violation of the Privacy Act and the search warrant's segregation requirement;

c. Retaining and continuing to use improperly obtained private Facebook records, despite knowing they were obtained in violation of the search warrant.

97. Each separate act of disclosure constitutes an independent violation of the Privacy Act, including but not limited to:

a. Defendant FBI's initial transfer of all Facebook records to DOJ without following warrant-mandated filtering procedures;

b. Defendant DOJ's introduction of improperly obtained records into pre-trial filings (each filing being a separate violation);

c. Defendant DOJ's use of the improperly obtained records at multiple trial stages (each submission into evidence constituting a separate violation);

d. Defendant DOJ's continued retention and use of these records post-trial, despite knowledge of their improper acquisition.

98. These actions demonstrate a willful and intentional violation of the Privacy Act, meeting the threshold for statutory damages.

99. As a direct result of the unlawful, willful and intentional actions of the FBI and DOJ, Plaintiffs suffered actual damages including wrongful convictions,

emotional distress, reputational harm, economic loss and continued

consequences as outlined in the Prayer for Relief (Sections B-G Relating to

Privacy Act Claims).

## COUNT IV – PRIVACY ACT OF 1974 (Failure to Make Reasonable Efforts Prior To Dissemination To Assure Records Are Accurate, Complete, Timely, and Relevant – 5 U.S.C. § 552(e)(6)

100.    Plaintiffs incorporate all preceding paragraphs.

101.    The Privacy Act, 5 U.S.C. § 552a(e)(6) requires agencies prior to

disseminating any record about an individual to any person other than an

agency, unless the dissemination is made pursuant to subsection (b)(2) of this

section, make reasonable efforts to assure such records are accurate,

complete, timely, and relevant for agency purposes.

102.    The Privacy Act, 5 U.S.C. § 552a(g)(1)(C), requires agencies to

maintain accurate, complete, timely, and relevant records to ensure that any

determination made about an individual is fair and not based on erroneous or

improperly retained data.

103.    Defendant DOJ further violated § 552a(e)(6) by failing to correct the

FBI's error and instead using improperly obtained private records to

influence legal proceedings against Cynthia Price.

104.    Defendant DOJ further violated § 552a(e)(6) by failing to correct the

FBI's error and instead using improperly obtained private records to

influence legal proceedings against Christopher Price.

105.    Defendants may attempt to invoke 5 U.S.C. § 552a(j) and (k) law

enforcement exemptions. This complaint involves claims under

552a(b)(conditions of disclosure), 552a(e)(6), 552a(e)(7) and 552a(e)(10).  None

of the claims in this complaint fall under an exemption under 552a(k)

because none are brought under 552a(c)(3), (d), (e)(4)(G)-(I), or 552a(f), None

of the claims fall under the exemption authority of 552a(j) because the claims

fall under the specific statutory exemptions from such authority under

552a(b)(conditions of disclosure), (c)(1) and (2), (e)(4)(A) through (F), (e)(6)

(distribution in open court is not to an agency), (e)(7) (First Amendment

information), (e)(9), 10 (appropriate administrative safe guards), and (e)(11).

106.    Defendants' failure to ensure record accuracy was willful and

intentional, making them liable under the Privacy Act.

107.    As a direct result of the unlawful, willful and intentional, actions of the

FBI and DOJ, Plaintiffs suffered actual damages including wrongful

convictions, emotional distress, reputational harm, economic loss and

continued consequences as outlined in the Prayer for Relief (See Section B-G

relating to Privacy Act claims).

**COUNT V – PRIVACY ACT OF 1974 (Inappropriately Maintaining a Record Describing How Any Individual Exercises Rights Guaranteed By the First Amendment, Unless Expressly Authorized By Statute or by the Individual Failure to Establish Safeguards – 5 U.S.C. § 552a(e)(7))**

108.    Plaintiffs incorporate all preceding paragraphs.

109.    5 U.S.C. 552a(e)(7) requires that agencies "maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity.

110.    The evidence submitted a trial which was the unfiltered Facebook return has extensive information regarding how the Prices exercise rights guaranteed by the First Amendment that are outside of the scope of the filtering requirements of the search warrant. These records have maintained by the FBI and DOJ throughout and unsealed in violation of the search warrant and the (e)(7). These messages and information include political discussions, membership in political groups, information about attending certain political assemblies, other members who are members of these political groups.  Moreover, this additional political information and record of how the Prices exercise such rights was not "pertinent to" the authorized law enforcement activity.

111.    (e)(7) is an independent statutory reason that the search warrant application was not responsible.

112.    Section (e)(7) requires only that the record be maintained by an agency that keeps a system of records, not that the record be a part of that system. See Albright v United States, 631 F. 2d 915, 918-20 (D.C. Cir.1980)

113.    As a direct result of the unlawful, willful and intentional actions of the

FBI and DOJ, Plaintiffs suffered actual damages including wrongful

convictions, emotional distress, reputational harm, economic loss and

continued consequences as outlined in the Prayer for Relief (Sections B-G

Relating to Privacy Act Claims).

**Count V: Violation of the Privacy Act of 1974 – Failure to Establish Rules of Conduct and Provide Instruction (5 U.S.C. § 552a(e)(9))**

114.    Plaintiffs incorporate by reference all preceding paragraphs of this

Complaint as though fully set forth herein.

115.    Pursuant to 5 U.S.C. § 552a(e)(9), each agency maintaining a system of

records is required to:

    **s.** Establish rules of conduct for persons involved in the design,

    development, operation, or maintenance of any system of records, or in

    maintaining any record;

    **t.** Instruct each such person with respect to such rules and the

    requirements of this section;

    **u.** Instruct each such person regarding any other rules and procedures

    adopted pursuant to this section, including the penalties for

    noncompliance.

116.    Defendants, the Federal Bureau of Investigation (FBI) and the

Department of Justice (DOJ), maintain systems of records containing

Plaintiffs' private electronic communications. The provision further covers

"maintaining any record"

117.    These systems are **not exempt** from § 552a(e)(9) under either §

552a(j) or § 552a(k), and Defendants remain fully obligated to comply with §

552a(e)(9).

**Failure to Instruct Personnel**

    **s.** Defendants failed to instruct all relevant personnel regarding: a) the

rules of conduct applicable to the processing, segregation, sealing, and

disclosure of Plaintiffs' records; b) their responsibilities under the

Privacy Act, including the prohibition against unauthorized disclosure

under § 552a(b), safeguarding obligations under § 552a(e)(10), and

limitations on maintaining records reflecting First Amendment

activities under § 552a(e)(7); and c) the penalties for noncompliance,

including criminal penalties outlined in § 552a(i).

118.    Defendants failed to provide adequate instruction and training to the

FBI personnel performing the initial filtering and segregation process, DOJ

prosecutors who received the improperly filtered materials, and any other

persons responsible for maintaining or disseminating Plaintiffs' records.

119.    Defendants' failure to **instruct** employees on the **full scope** of rules

and procedures adopted pursuant to the Privacy Act resulted in: a) The

unauthorized dissemination of information explicitly outside the scope of

permissible disclosures under the search warrant; b) The introduction of

irrelevant and private data into public judicial proceedings; and c) A systemic breakdown of compliance and enforcement mechanisms meant to protect individuals' privacy rights.

**Failure to Establish Rules of Conduct and Implement Penalties**

120.    Defendants failed to establish and implement appropriate rules of conduct, including: a) Rules governing the restriction of access to information sealed or designated as irrelevant by the search warrant; b) Rules clearly defining permissible disclosure of records under § 552a(b); c) Rules ensuring personnel were adequately trained and monitored in safeguarding sensitive records under § 552a(e)(10).

121.    Defendants failed to implement disciplinary measures or enforcement policies to ensure accountability for breaches of the rules of conduct. As a result, personnel engaged in conduct that violated the Privacy Act without fear of sanction.

122.    As a direct result of the unlawful, willful and intentional actions of the FBI and DOJ, Plaintiffs suffered actual damages including wrongful convictions, emotional distress, reputational harm, economic loss and continued consequences as outlined in the Prayer for Relief (Sections B-G Relating to Privacy Act Claims).

**COUNT VI – PRIVACY ACT OF 1974 (Failure to Establish Safeguards – 5 U.S.C. § 552a(e)(10))**

123.    Plaintiffs incorporate all preceding paragraphs.

124.    The Privacy Act requires agencies to establish safeguards to protect

individuals' records from unauthorized disclosure, loss, or misuse. 5 U.S.C. §

552a(e)(10). Establishing safeguards must be read as establishing sufficient

safeguards.

125.    Defendant FBI failed to establish sufficient safeguards and, thus,

violated this provision. As the Prices have stated repeatedly in motions, the

filtering process is ambiguously described and open for the malfeasance that

occurred. Because the filtering structure was vague, poorly designed or

improperly implemented by employees who did not appreciate the

significance, it failed as a safeguard.

126.    Defendant DOJ also failed to establish sufficient safeguards to ensure

non-filtered information is not introduced and a public trial and not used by

the prosecutor in questioning.

127.    Both Defendants did not have their employees properly educated with

regard to these rules and the necessary operation to secure the unauthorized

disclosures.

128.    The failure to establish sufficient safeguards must be viewed in light of

the sweep and sensitivity of the information gathered under step 1 of the

search warrant.  This can be anything, including private phone numbers and

phones, private messages, political groups and organization information,

geolocation data, IP addresses, devices connect to the account, website

connections and more.  It is a stunning amount of private information and,

apparently, the FBI and DOJ are not sufficiently educated or unable to handle the material properly.

129.    Safeguards mean proactive policies that are more than just barebones compliance measures.

130.    Moreover, rather than try to address the safeguard issues the DOJ literally took the untenable position that the prosecutors could, in their discretion, address the filtering process on their discretionary timeline as opposed to before the trial.

131.    As a direct result of the unlawful, willful and intentional actions of the FBI and DOJ, Plaintiffs suffered actual damages including wrongful convictions**,** emotional distress**,** reputational harm, economic loss and continued consequences as outlined in the Prayer for Relief (Sections B-G Relating to Privacy Act Claims).

## PRAYER FOR RELIEF

### A. Compensatory Damages (Per Plaintiff) Under the FTCA

An award of compensatory damages under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), to compensate each Plaintiff for the harm caused by Defendants' unlawful and tortious conduct including for

  1.    wrongful district court convictions and sentencing;

  2.    failure to obtain release pending appeal;

  3.    subsequent incarceration for Cynthia;

4.     wrongful fines and restitution payments;

5.     emotional distress for Cynthia Price, including but not limited to, for Cynthia Price a) a hostile, dangerous, stressful and uncomfortable situation in prison including being housed in a unit with biological men and being forced room with a convicted murder and then a sex offender; b) separation from her husband considering her role as primary care giver and patient navigator for Christopher Price during a critical time in his Stage IV cancer treatment

6.     emotional distress for Christopher Price a) related to his wife being sent to prison and enduring the circumstances described above; separation from his wife, primary care giver and patient navigator at critical times in his health and cancer treatments, disruption in his partnership at the printing shop

7.     reputational harm

8.     economic loss including, but not limited to, loss of income due to lost time from prison time, loss of income from lost opportunity, disruption in partnership at print shot, court time, meeting with probation officers and trial preparation and additional expenses for prison stay

9.     Restrictions on liberty including prison, travel restrictions and reporting and oversight requirements

10.   Loss of videos and photos from shutdown of Facebook Accounts

11.   Chilling effect on communications and First Amendment activities

 in an amount to be determined at trial considering each Plaintiff.  Significant

additional damages above the requests in the December 2023 letters to the FBI and

DOJ in light of issues related to the incarceration of Cynthia Price and impacts to

Christopher Price since that time. The Prices seek to account for this as described in

paragraphs 9, 74 and 83 of this Complaint.

**B. Actual Damages Under the Privacy Act (Per Plaintiff)**

An award of actual damages under the Privacy Act of 1974, 5 U.S.C. § 552a(g)(4),

for injuries resulting from Defendants' willful or intentional violations of the

Privacy Act, including for the identical items and damages described under

paragraph A as compensatory damages.

1.   wrongful district court convictions and sentencing;

2.   failure to obtain release pending appeal;

3.   subsequent incarceration for Cynthia;

4.   wrongful fines and restitution payments;

5.   emotional distress for Cynthia Price, including but not limited to,
     for Cynthia Price a) a hostile, dangerous, stressful and
     uncomfortable situation in prison including being housed in a unit
     with biological men and being forced room with a convicted murder
     and then a sex offender; b) separation from her husband

50

considering her role as primary care giver and patient navigator for Christopher Price during a critical time in his Stage IV cancer treatment

6. emotional distress for Christopher Price a) related to his wife being sent to prison and enduring the circumstances described above; separation from his wife, primary care giver and patient navigator at critical times in his health and cancer treatments, disruption in his partnership at the printing shop

7. reputational harm

8. economic loss including, but not limited to, loss of income due to lost time from prison time, loss of income from lost opportunity, disruption in partnership at print shot, court time, meeting with probation officers and trial preparation and additional expenses for prison stay

9. Restrictions on liberty including prison, travel restrictions and reporting and oversight requirements

10. Loss of videos and photos from shutdown of Facebook Accounts

11. Chilling effect on communications and First Amendment activities

in an amount to be determined at trial considering each Plaintiff. The actual damages under the Privacy Act are not limited by any provisions under the FTCA regarding the December 2023 letters to FBI and DOJ.

**C. Statutory Minimum Damages Under the Privacy Act (Per Violation, Per Plaintiff, as Appropriate)**

Statutory minimum damages of not less than $1,000 for each violation of the Privacy Act, as provided by 5 U.S.C. § 552a(g)(4), considering each Plaintiff and for each violation committed by each Defendant, as appropriate.

**D. Declaratory Relief Pursuant to 28 U.S.C. § 2201**

A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that Defendants' actions, as alleged herein, violated Plaintiffs' rights under the Privacy Act of 1974, 5 U.S.C. § 552a.

**E. Injunctive Relief Pursuant to 5 U.S.C. § 552a(g)(3)(A)**

An order granting injunctive relief under the Privacy Act of 1974, 5 U.S.C. § 552a(g)(3)(A), requiring Defendants to:

1. Implement adequate safeguards to protect Plaintiffs' private information;

2. Delete or amend any records related to Plaintiffs' private communications obtained through the improperly executed search warrant. Such records shall not be retained in any system of records under the control of either agency, except where they have been lawfully included in the official court record of the criminal proceedings

3. Prevent future unauthorized disclosures of Plaintiffs' private information;

4. Enjoin defendants from using, disseminating, or relying upon any improperly obtained and disclosed private records from the Facebook search warrant in any future legal proceedings, investigations, or agency actions, including but not limited to future criminal trials, sentencing proceedings, and government investigations

5. Correct and/or expunge any records maintained in violation of the Privacy Act, where applicable.

6. Order defendants to implement robust procedures for filtering and segregating data before obtaining, using, or sharing any private communications in future search warrants or investigations.

7. Order defendants to provide comprehensive training to all relevant personnel within the FBI and DOJ, including those involved in the processing, filtering, and handling of personal communications and sensitive data, on the proper implementation of privacy safeguards, as required under the Privacy Act and the Fourth Amendment.

8. Order defendants to publicly disclose the steps they have taken to correct the record and ensure compliance with the Privacy Act and Fourth Amendment protections, including the publication of a report detailing their changes to policies, procedures, and personnel training.

9. Order defendants to provide a public statement of accountability for the improper handling and disclosure of Plaintiffs' private data

10. Order defendants to appoint an independent third-party monitor to oversee and review Defendants' compliance with the Privacy Act and the Fourth Amendment, including the proper implementation of filtering procedures and the maintenance of privacy safeguards

## F. Attorney's Fees and Costs Under 5 U.S.C. § 552a(g)(3)(B) and (g)(4)(B)

An award of reasonable attorney's fees and costs of this action, as authorized by 5 U.S.C. § 552a(g)(3)(B) for injunctive relief and § 552a(g)(4)(B) for actual damages, in addition to the other damages requested.

**G. Such Other and Further Relief as the Court Deems Just and Proper.**

Dated: March 18, 2025

Respectfully submitted,

/s/ Nandan Kenkeremath

Nandan Kenkeremath

DC Bar 384732

USDC DC 384732

2707 Fairview Court

Alexandria, Virginia 22311

nandank@comcast.net

703-407-9407

Attorney for Plaintiffs