UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CYNTHIA CATHERINE PRICE, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 25-0795 (TSC) |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND**
<u>**SUPPORTING MEMORANDUM**</u>

## TABLE OF CONTENTS

STANDARD OF REVIEW...........................................................................................6

    I.    Rule 12(b)(1) Standard.........................................................................6

    II.    Rule 12(b)(6) Standard.........................................................................6

ARGUMENT ......................................................................................................8

    I.    Plaintiffs' FTCA Claims Should Be Dismissed For Lack Of Jurisdiction. ...........8

    II.    All Counts Should Be Dismissed For Failure To State A Claim ........................10

        A.    Plaintiffs Have Failed To State A Claim Under The FTCA....................10

        B.    Plaintiffs Have Failed To State A Claim Under The Privacy Act. ...........13

CONCLUSION....................................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Albright v. United States,*
    732 F.2d 181 (D.C. Cir. 1984) ........................................................................ 15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................... 7, 10

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................................... 7

*Buie v. United States,* Civ. A. No. 22-3501
    (CRC), 2024 U.S. Dist. LEXIS 24997 (D.D.C. Feb. 9, 2024) ............................ 10

*Chichakli v. Tillerson,*
    882 F.3d 229 (D.C. Cir. 2018) ............................................... 14, 15, 17

*Davis v. District of Columbia,*
    156 F. Supp. 3d 194 (D.D.C. 2016) ................................................. 7

*Doe v. Dept. of Just.,*
    660 F. Supp. 2d 31 (D.D.C. 2009) ................................................. 22

*Doe v. Stephens,*
    851 F.2d 1457 (D.C. Cir. 1988) ..................................................... 14

*Edmonds v. United States,*
    436 F. Supp. 2d 28 (D.D.C. 2006) ................................................... 9

*FAA v. Cooper,*
    566 U.S. 284 (2012) ..................................................................... 17

*Guest v. Leis,*
    255 F.3d 325 (6th Cir. 2001) ......................................................... 18

*Haase v. Sessions,*
    893 F.2d 370 (D.C. Cir. 1990) ....................................................... 14

*Hampton v. Comey,*
    No. 16-5058, 2016 U.S. App. LEXIS 20191 (D.C. Cir. Sept. 8, 2016) ................ 9

*Herbert v. Nat'l Acad. of Sci.,*
    974 F.2d 192 (D.C. Cir. 1992) ......................................................... 6

*Hitchcock v. United States,*
    665 F.2d 354 (D.C. Cir. 1981) ....................................................... 10

*Hubbard v. EPA,*
    809 F.2d 1 (D.C. Cir. 1986) ........................................................... 18

*Jovanovic v. U.S.-Algeria Bus. Council*,
  561 F. Supp. 2d 103 (D.D.C. 2008) ...................................................................... 7

*Kelley v. FBI*,
  67 F. Supp. 3d 240 (D.D.C. 2014) ...................................................................... 16

*King v. Barbour*,
  240 F. Supp. 3d 136 (D.D.C. 2017) ..................................................................... 12

*Lamb v. Millennium Challenge Corp.*,
  228 F. Supp. 3d 28 (D.D.C. 2017) ...................................................................... 21

*Loumiet v. United States*,
  65 F. Supp. 3d 19 (D.D.C. 2014) ......................................................................... 9

*Mandel v. OPM*,
  79 F. App'x 479 (2d Cir. 2003) ......................................................................... 18

*Maydak v. United States*,
  630 F.3d 166 (D.C. Cir. 2010) ......................................................................... 15

*Mitskog v. Dept. of Just.*,
  No. 23-5121, 2024 U.S. App. LEXIS 10865 (D.C. Cir. May 2, 2024) ............................... 18

*Moore v. United States*,
  213 F.3d 705 (D.C. Cir. 2000) ......................................................................... 12

*Rann v. Chao*,
  154 F. Supp. 2d 61 (D.D.C. 2001) ........................................................................ 6

*Risley v. Hawk*,
  108 F.3d 1396 (D.C. Cir. 1997) (per curiam) ......................................................... 14

*Schuchart v. La Taberna del Alabardero, Inc.*,
  365 F.3d 33 (D.C. Cir. 2004) ......................................................................... 10

*Scott v. Conley*,
  937 F. Supp. 2d 60 (D.D.C. 2013)(C) ............................................................ 14, 16

*Smalls v. Emanuel*,
  840 F. Supp. 2d 23 (D.D.C. 2012) ........................................................................ 9

*Thompson v. Capitol Police Bd.*,
  120 F. Supp. 2d 78 (D.D.C. 2001) ........................................................................ 6

*Thompson v. Dept. of State*,
  400 F. Supp. 2d 1 (D.D.C. 2005) ........................................................................ 16

*Upshaw v. United States*,
  669 F. Supp. 2d 32 (D.D.C. 2009) ........................................................................ 9

*Vanover v. Hantman*,
   77 F. Supp. 2d 91 (D.D.C. 1999) .............................................................................. 6

*Walker v. Ashcroft, Civ. A. No. 99-2385*
   (GK), 2001 WL 37153642 (D.D.C. Apr. 30, 2001) ............................................... 19

*White v. OPM*,
   840 F.2d 85 (D.C. Cir. 1988) ................................................................................. 15

*Wilson v. Dep't of Transp.*,
   759 F. Supp. 2d 55 (D.D.C. 2010) ........................................................................... 9

*Winglet Tech., LLC v. United States*,
   No. 22-5203, 2022 U.S. App. LEXIS 35597 (D.C. Cir. Dec. 23, 2022) ................. 9

*Wolf v. Regardie*,
   553 A.2d 1213 (D.C. 1989) ............................................................... 8, 10, 11, 12

## Other Authorities

5 U.S.C. § 552a .................................................................. 6, 13, 14, 19, 20, 22, 23

18 U.S.C. § 1752 ........................................................................................................ 1

28 C.F.R. §§ 16.81 ............................................................................................. 14, 22

28 U.S.C. § 1346 ..................................................................................................... 10

28 U.S.C. § 2674 ............................................................................................... 10, 12

28 U.S.C. § 2680 .......................................................................................... 8, 10, 12

40 U.S.C. § 5104 ............................................................................................... 1, 2, 3

Pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6), the United States, the Department of Justice, and the Federal Bureau of Investigation move to dismiss this action brought under the Federal Tort Claims Act ("FTCA") and the Privacy Act by Plaintiffs Cynthia Price (also known as Cynthia Ballanger) and Christopher Price. As grounds, Defendants state as follows.

## BACKGROUND

I. **Plaintiffs' Criminal Conviction Following a Bench Trial**.

On March 21, 2023, Plaintiffs were found guilty of criminal conduct for their participation in the events of January 6, 2021, following a bench trial before Judge Boasberg in the case styled, *United States v. Ballanger*, Case No. 21-0719 (D.D.C.) Each was found guilty of (i) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); (ii) Disorderly or Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); (iii) Disorderly or Disruptive Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and (iv) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Case No. 21-0719, Mem. Op. (ECF No. 127) at 1, 4. The district court summarized the facts it found in reaching its guilty verdict as follows:

> Prior to traveling to the Capitol that day, Ballanger stated in texts or Facebook posts that "the time has come" and that she "needed to do something more than vote." [Tr. II] at 167. She came to the Capitol armed with pepper or bear spray and a pocket knife. *Id.* While attending former President Trump's rally, Ballanger and Price found it difficult to hear him and decided to head to a nearby café instead. *Id.* at 168. There, Ballanger heard "flash bangs" and "received a text that the Capitol had been breached." *Id.* Price "believed that he heard a bomb." *Id.* The two "also observed a multitude of police cars, of sirens, of officers, [and] fire engine[s] with lights flashing," but "nonetheless decided to head up to the Capitol grounds." *Id.*
>
> At the time, the Court found, the Capitol was closed, for both the COVID-19 pandemic and the joint session of Congress at which the Vice President — a Secret Service protectee — was present to certify the election. *Id.* at 166. The "entire perimeter of the Capitol grounds was restricted," too, "via bike racks, snow fencing,

and area closed signs." *Id.* Hours after the Vice President arrived, Defendants entered the Capitol grounds area by "stepping over an Olmsted wall and pass[ing] snow fencing" and "bike racks that were down." *Id*. at 167–68. Around the same time, Price texted, "[W]e're just taking over the Capitol." *Id.* He also took a video of a woman repeatedly banging on a Capitol window, *id*. at 168–69, and shared his observations of "tear gas and explosions going off, someone on the floor, [and] CPR administered." *Id*. at 169. The two marched onwards to the Capitol building.

The Senate Wing Door was "only for fire and emergencies" and was "typically not open." *Id.* at 166. Officers "were holding off rioters" at that door, but "[p]eople were yelling" and "breaking windows." *Id*. at 167. The officers "could not stop the rioters who broke through" the Senate Wing Door. *Id*. Defendants could hear alarms going off and observed tear gas and officers in riot gear. *Id*. at 169.

Defendants nonetheless entered through the breached doorway. They did so "without pushing or shoving anyone." *Id*. By then, a desk was "being used as a barricade to the door" that had not been breached, and "the officers [had] created a line to prevent people" who had entered through the breached Senate Wing Door from crossing the foyer inside. *Id*. at 167. "There was broken glass on the floor," and "[s]irens were going off from inside the building which were deafening." *Id.* at 167, 169. Price texted, "[I]n and broken glass everywhere," and as the crowd was chanting, "[F]ight for Trump," he texted, "[W]orth fighting for Trump[.]" *Id*. at 169. The two walked around inside the building for approximately seven minutes. *Id.* Shortly afterwards, Price exclaimed, "[W]e went inside. They can't stop you. It's the people's house." *Id*. at 169. Ballenger texted, "[W]e stormed the Capitol" and that they "totally owned it." *Id.*

*Id.* at 2-4.

In connection with the prosecution of this matter, the FBI obtained a warrant to search Plaintiffs' Facebook accounts. Am. Compl. (ECF No. 4) ¶ 15. Plaintiffs moved to suppress information derived from that search warrant, which the government opposed and which the district court denied. *Id.* ¶ 16. As the transcript of that proceeding reflects, the district court denied that motion on several grounds:

First of all, the defense argues that the material sought was governed by the Stored Communications Act or SCA. The defense argument seems a little bit contradictory because at times they say it is not covered by the SCA. And if it's not covered, then there is no requirement for the government to abide by the SCA. But even if it is covered by the SCA, I find the government complied with the SCA. And if it didn't comply, the remedy is not exclusion because that's only a Fourth Amendment remedy, and there's no exclusionary remedy in the act. The remedy is damages. So

any purported violation of the SCA would not lead to suppression.  Second, I believe the warrant for Fourth Amendment purposes was sufficiently particular. There was clearly probable cause to believe the defendants committed crimes on January 6, and it was reasonable to believe that Facebook would have evidence of those crimes given to show their intent incoming to the Capitol that day.  And finally, even if the warrant was overly broad or had some deficiencies, I find that its approval then permitted law enforcement to rely on it in good faith and that the good faith exception, therefore, would protect the government's obtaining the information even if the warrant had deficiencies. So for those reasons, I will deny [the] defense motion[.]

Transcript (Doc. 2039217), Case No. 23-3198 (D.C. Cir.), Appendix Vol. I, at ECF pp. 159-60.

During trial, the government moved to admit three exhibits containing the results of the Facebook search, specifically, Exhibits 308A, 308B and 309A.  *Id*. at 269-70.  Defense counsel did not object to their admission, and the court admitted them noting the absence of any objection.  *Id*.  Although the public docket reflects the admission of these exhibits into evidence, the exhibits themselves were not entered on the docket and are not publicly available from the docket.  Case No. 21-0719, Exhibit List (ECF No. 104) at ECF p. 8.

Following their guilty verdict, Plaintiffs moved for a new trial, including on the basis that the government "'violated the terms of a Facebook search warrant and included exhibits in violation of that Warrant' at trial."  Case No. 21-719, Mem. Op. (ECF No. 127) at 20.  The district court rejected that argument:

Although their precise argument eludes the Court, they appear to take issue with a set of Government exhibits (308A, 308B, and 309A) that contain content obtained from Facebook. The argument appears to be that these exhibits contain so much content that the Government must have reached beyond the terms of the search warrant, which required it to filter and retain only relevant content. *See* ECF No. 85-1 (Search Warrant) at 5 (describing filtering requirement).

In advancing a third and related basis for a new trial, Defendants further argue that the Government violated its *Brady* obligations to provide them with exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83 (1963); Mot. New Trial at 9–10. Specifically, they argue that "the government tried to state Cynthia Price was sympathetic to an article that contemplated executing then-Vice President Pence

- 3 -

"when the Government had *Brady* material buried in a 14,637 page Facebook document that states the opposite." Mot. New Trial at 2.

Even if these underdeveloped allegations held water, no miscarriage of justice would have occurred. At trial, Defendants did not object to the admission of any of the three exhibits they now express concerns with. *See* Tr. I at 115–116 (admitting exhibits without objection) Neither the Government nor the Court heavily relied on them. During cross-examination, the Government referred only to Exhibit 308B, and only to question Ballenger about Facebook exchanges in which she shared the article that contemplated executing Pence. *See* Tr. II at 81–82. Although Ballenger's evasive responses during that exchange contributed to the Court's finding that she was not credible, *see id.* at 170 (referring to this exchange), they were hardly necessary to that credibility determination (which resulted from Ballenger's multiple mischaracterizations and evasive answers on the stand), let alone to the Court's determination of intent.

*Id*. at 20-21.

Plaintiffs appealed their conviction and, while their appeal was pending, the President issued a pardon for January 6 related offenses. Thereafter, the D.C. Circuit approved an unopposed motion to vacate Plaintiffs' convictions and remanded the case back to the district court to dismiss the cases against the Prices as moot. Am. Compl. (ECF No. 4) ¶ 47. The district court did so. *See* Case No. 21-0179, Minute Order (Feb. 5, 2025).

## II.    **Plaintiffs' Allegations In This Lawsuit**

In this action, Plaintiffs allege that the FBI's application for the search warrant of Facebook content was "based on a misrepresentation to the magistrate" regarding the permissible scope of the warrant inducing the magistrate to approve a "broader search warrant" than the law permitted. Am. Compl. (ECF No. 4) ¶¶ 18-21. Plaintiffs further allege that federal prosecutors "used as evidence in the public trial, without seal . . . the broad 14,637-page data dump of Cynthia Price's Facebook messenger messages styled Exhibit 308(b)" and "also placed into evidence in the public trial, without seal, 695 pages of Christopher Prices Facebook messenger messages and other information styled as 309(A)." *Id*. ¶ 27.

Plaintiffs allege that the prosecutors' use of the search results as evidence was done in violation of the segregation procedure set forth in the search warrant which provided for an initial review by the "United States government" to identify information obtained from the warrant that falls within Section II of the warrant and then the sealing of information that falls outside that section. *Id.* ¶ 25. Plaintiffs allege that the prosecutors "falsely claimed compliance with the two-step procedure" in the government's opposition to Plaintiffs' motion to suppress the results of the search warrant. *Id.* ¶ 33. Plaintiffs further allege that the prosecutors engaged in "bad faith use of unfiltered information" at trial and failed to "acknowledge, admit or to support steps to correct" their alleged non-compliance with the two-step procedure in the government's response to Plaintiffs' post-trial motions, during sentencing and on appeal. *Id.* ¶¶ 34-46.

As the above background discussion reflects, however, "[n]either the Government nor the Court heavily relied on" the three exhibits containing the Facebook search results at the criminal trial. Case No. 21-719, Mem. Op. (ECF No. 127) at 20-21. As the district court who conducted that bench trial observed, "the Government referred only to Exhibit 308B, and only to question Ballenger about Facebook exchanges in which she shared the article that contemplated executing Pence." *Id.* That is consistent with Plaintiffs' allegations, which focus on that Facebook message. Am. Compl. (ECF No. 4) ¶ 35. The district court has explained that this evidence was not material either to its determination as to Ballenger's credibility or intent. Case No. 21-719, Mem. Op. (ECF No. 127) at 20-21. Plaintiffs, moreover, have not alleged how the filtering they claim was required by the Stored Communications Act would have resulted in the exclusion of a Facebook message that pertained to the events of January 6, 2021.

Plaintiffs nevertheless assert claims under the FTCA based on the tort of intrusion upon seclusion (count one) and public disclosure of private facts (count two) and also assert violations

of the Privacy Act (counts three to seven).  They seek compensatory damages under the FTCA and "actual damages" under the Privacy Act.  *Id.* at 58-61.  They also seek injunctive relief pursuant to 5 U.S.C. § 552a(g)(3)(A), which is a provision of the Privacy Act that relates to an alleged violation of section 552a(d)(1) (*i.e.*, a request to access records).  Plaintiffs, however, do not allege that they made a request to access their records under section 552a(d)(1) nor do they allege a violation of that section.

As addressed more fully below, Plaintiffs' claims under the FTCA and Privacy Act fail for several reasons.  Accordingly, this action should be dismissed.

## STANDARD OF REVIEW

### I.    <u>Rule 12(b)(1) Standard</u>

When reviewing a Rule 12(b)(1) motion to dismiss, "the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiffs favor." *Thompson v. Capitol Police Bd.*, 120 F. Supp. 2d 78, 81 (D.D.C. 2001); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999). At the same time, "[t]he court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), *aff'd*, 346 F.3d 192 (D.C. Cir. 2003). Plaintiff must carry the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Thompson*, 120 F. Supp. 2d at 81; *Vanover*, 77 F. Supp. 2d at 98. In determining whether jurisdiction exists, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  *See Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### II.    <u>Rule 12(b)(6) Standard</u>

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. In ruling on a motion to dismiss, the Court "must construe the complaint in a light most favorable to the plaintiff and must

accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *Jovanovic v. U.S.-Algeria Bus. Council*, 561 F. Supp. 2d 103, 110 (D.D.C. 2008).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the standard of pleading that a plaintiff must meet to survive a motion to dismiss under Rule 12(b)(6). Although "detailed factual allegations" are not necessary to survive a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. The facts alleged in the complaint, moreover, "must be enough to raise a right to relief above the speculative level," *id.*, or must be sufficient to "state a claim for relief that is plausible on its face," *id.* at 570.

The Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), further clarified the new plausibility pleading standard, explaining that this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* The plausibility standard "asks for more than a sheer possibility that a defendant acted unlawfully. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n] that the pleader is entitled to relief.'" *Id.*

In evaluating the sufficiency of a complaint under Rule 12(b)(6), the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice." *Davis v. District of Columbia,* 156 F. Supp. 3d 194, 199 (D.D.C. 2016). The Court may consider those materials without treating the motion as one for summary judgment under Rule 56. *Id.*

# ARGUMENT

## I.     <u>Plaintiffs' FTCA Claims Should Be Dismissed For Lack Of Jurisdiction.</u>

The Court lacks subject matter jurisdiction over Plaintiffs' FTCA claims based on the torts of intrusion upon seclusion (count one) and public disclosure of private facts (count two) because the United States has not waived its sovereign immunity under the FTCA for claims arising out of misrepresentation or deceit.  28 U.S.C. § 2680(h).  Although certain claims are excluded from the preclusive effect of section 2680(h) when based on the acts or omissions of investigative or law enforcement officers, claims arising out of "misrepresentation" or "deceit" are not among them. *Id.*  As addressed below, Plaintiffs' claims arising out of "misrepresentation" or "deceit" and thus should be dismissed.

The tort of intrusion upon seclusion has three elements: "(1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination, . . . ; (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns,. . . ; (3) that would be highly offensive to an ordinary, reasonable person."  *Wolf v. Regardie*, 553 A.2d 1213, 1217 (D.C. 1989).  The alleged act of intrusion identified by Plaintiffs in support of this claim is the FBI's alleged misrepresentations in its search warrant application that allegedly induced the magistrate judge to issue an overly broad warrant. Am. Compl. (ECF No. 4) ¶ 64.

Moreover, Plaintiffs' claim of alleged public disclosure of private facts—which the government understands to reference the government's alleged inclusion of unfiltered search results in exhibits admitted into evidence at trial—also arises out of the same alleged misrepresentation.  It also is based on Plaintiffs' allegation that, after the search warrant results had been collected by the government, prosecutors made "[m]isrepresentation[s]" to the court in opposing Plaintiffs' motion to suppress the evidence obtained from the warrant.  *Id.* ¶ 65.

As the intrusion upon seclusion claim and public disclosure of private facts claims arise from alleged misrepresentations, they cannot be pursued under the FTCA.  *See Hampton v. Comey*, No. 16-5058, 2016 U.S. App. LEXIS 20191, at *3 (D.C. Cir. Sept. 8, 2016) ("The claim stated in Count III (false light invasion of privacy) was barred by 28 U.S.C. § 2680(h)."); *Winglet Tech., LLC v. United States*, No. 22-5203, 2022 U.S. App. LEXIS 35597, at *2 (D.C. Cir. Dec. 23, 2022) ("The district court properly dismissed the case for lack of subject matter jurisdiction because appellants' defamation and false light claims fall under the exception to the government's waiver of sovereign immunity in the Federal Tort Claims Act."); *see also Wilson v. Dep't of Transp.*, 759 F. Supp. 2d 55, 64 (D.D.C. 2010) (dismissing a former federal employee's defamation claim because the FTCA explicitly bars such claims).

The label that Plaintiffs have placed on these claims is irrelevant.  Even if claims are not labeled as deceit or misrepresentation, they should be dismissed for lack of subject matter jurisdiction when they are based on alleged misrepresentations as is the case here.  *Smalls v. Emanuel*, 840 F. Supp. 2d 23, 34 (D.D.C. 2012). Accordingly, because the intrusion upon seclusion and public disclosure of private facts claims are based on alleged false statements, any such claims are barred.  *See Loumiet v. United States*, 65 F. Supp. 3d 19, 27 (D.D.C. 2014) (dismissing an intentional infliction of emotional distress claim arising from false information in the press); *Edmonds v. United States*, 436 F. Supp. 2d 28, 35-36 (D.D.C. 2006) (dismissing a negligent infliction of emotional distress claim arising from a federal investigation); *Upshaw v. United States*, 669 F. Supp. 2d 32, 44 (D.D.C. 2009) (dismissing an intentional infliction of emotional distress claim brought under the FTCA because injury was caused by defamatory statements).

**II.**     **All Counts Should Be Dismissed For Failure To State A Claim**

To state a claim, a plaintiff must plead sufficient "factual content" to "nudge[] his claims . . . across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683.  Plaintiffs have failed to do so for all their claims as set forth more fully below.

**A.**     **Plaintiffs Have Failed To State A Claim Under The FTCA.**

As an initial matter, the FTCA does not "confer a cause of action" but "merely provides a method for enforcing state tort law against the federal government." *Buie v. United States*, Civ. A. No. 22-3501 (CRC), 2024 U.S. Dist. LEXIS 24997, at *14-15 (D.D.C. Feb. 9, 2024).   Under the FTCA, the government is liable only "'in the same manner and to the same extent as a private individual under like circumstances.'" 28 U.S.C. § 2674.  The FTCA provides that claims must be determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The United States analyzes below Plaintiffs' claims under District of Columbia law, where the warrant application was made and where the cases against Plaintiffs were prosecuted. *See Hitchcock v. United States*, 665 F.2d 354, 359 (D.C. Cir. 1981).

1.     Plaintiffs Have Failed To Plausibly Plead An FTCA Claim Based On The Tort Of Intrusion Upon Seclusion.

Plaintiffs cannot assert an FTCA claim based on the tort of intrusion upon seclusion for reasons already addressed above.  In addition to being precluded by 28 U.S.C. § 2680(h), Plaintiff has failed to plausibly state a claim based on that tort.  The tort of intrusion upon seclusion "was not created to protect" against the invasions of the type alleged in this case, that is, "the garnering of information from third parties." *Wolf*, 553 A.2d at 1217.   "Gathering information about [plaintiff] from third parties, 'even if pursued using subterfuge and fraud, cannot constitute . . . an intrusion upon [plaintiff's] solitude or seclusion.'"   *Id.*; *see also Schuchart v. La Taberna del Alabardero, Inc*., 365 F.3d 33, 36 (D.C. Cir. 2004) (same).

Here, Plaintiffs allege that the FBI made misrepresentations in its warrant application to secure an overly broad warrant to search Plaintiffs' Facebook accounts. But the specific conduct at issue concerns an information gathering effort directed at a third party, specifically, a warrant to collect data maintained by a third-party social media provider. The search that resulted from the warrant, therefore, was not of Plaintiffs' home or person, but of information stored by Facebook.

Examples of actionable intrusion include "peeping through windows or into some other locations in which a plaintiff has chosen to seclude himself; opening personal mail; eavesdropping on private conversations; entering a plaintiff's home without permission or searching his or her belongings; examining a plaintiff's private bank account; or other invasions of that nature." *Wolf*, 553 A.2d at 1217-18. But here, there is no alleged intrusion of Plaintiffs' persons or residence. Nor is applying for a search warrant to a magistrate judge "highly offensive to a reasonable person." *See id*. at 1217, 1219. And, to the extent Plaintiffs contend that the warrant application was "highly offensive" because it involved alleged misrepresentations, any such allegation would bring the claim squarely within the preclusive effect of section 2680(h) as already addressed above.

Plaintiffs, moreover, have not plausibly pled the tort of intrusion upon seclusion based on the conduct of prosecutors. The prosecutors are alleged to have sought the admission into evidence at trial of exhibits containing the Facebook search results, not of acquiring the search results in the first instance. Because the tort of intrusion upon seclusion requires as an element some act of intrusion into a person's sphere of privacy, the tort is inapplicable to the conduct of prosecutors challenged in this case.

2.  <u>Plaintiffs Have Failed To Plausibly Plead An FTCA Claim Based On The Tort Of
Public Disclosure Of Private Facts</u>

Plaintiffs likewise cannot assert an FTCA claim based on the tort of public disclosure of private facts because it is precluded by 28 U.S.C. § 2680(h) as addressed above.  Plaintiffs also have failed to plausibly plead the elements of this tort.

The tort of public disclosure of private facts has five elements: "(1) publicity, (2) absent any waiver or privilege, (3) given to private facts (4) in which the public has no legitimate concern (5) and which would be highly offensive to a reasonable person of ordinary sensibilities."  *Wolf*, 553 A.2d at 1220.  Plaintiffs have failed to plausibly plead this tort because the government is not alleged to have disclosed information obtained from the Facebook search warrant outside the judicial process, and the decision to admit those search results into evidence during trial was made by the district court without objection by defense counsel.  Any conduct by prosecutors during trial, moreover, is privileged and cannot form the basis for a claim in tort.

First, under the FTCA, the United States is liable only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  Because prosecutors enjoy absolute immunity from damages liability, the prosecutorial conduct at issue here—which relates to prosecutorial decisions occurring during pre-trial, trial and post-trial proceedings—cannot form the basis for liability against the government under the FTCA.  *See Moore v. United States*, 213 F.3d 705, 711 (D.C. Cir. 2000); *see also King v. Barbour*, 240 F. Supp. 3d 136, 141 (D.D.C. 2017) ("'[T]he judicial proceedings privilege applies to the range of potential participants in a legal proceeding—including attorneys, parties, judicial officers, witnesses, and jurors.'").

Second, the prosecutors did not make the ultimate decision to admit the search results into evidence at the criminal trial.  Although they moved for the admission of that evidence, it was the district court that decided to admit the evidence and it did so without objection by defense counsel

- 12 -

(the same counsel representing the Prices in this action). *See* Transcript (Doc. 2039217), Case No. 23-3198 (D.C. Cir.), Appendix Vol. I, at ECF pp. 269-70. Not only did the Prices thereby consent to the admission of the search results into evidence, but, given the absence of any objection by defense counsel, the government's conduct cannot be characterized as "highly offensive to a reasonable person of ordinary sensibilities."

Third, although admitted into evidence, the exhibits of the search results were not entered on the court's docket and thus are not publicly accessible from that docket. Nor does the trial transcript reflect that the contents of the exhibit were disclosed during trial beyond the limited portions that were used in examining witnesses as discussed in the background section above.

Further, the Amended Complaint does not allege any public disclosure of the search results by the FBI. It alleges only that the FBI, a component of the Department of Justice, provided the search results to prosecutors within the Department of Justice. Thus, the Amended Complaint has failed to plausibly plead any claim for the "public disclosure of private facts" based on the FBI's alleged conduct.

For all the above reasons, Plaintiffs have failed to assert a claim under the FTCA based on the conduct of the FBI or federal prosecutors.

**B.    Plaintiffs Have Failed To State A Claim Under The Privacy Act.**

Plaintiffs also assert several claims purportedly under the Privacy Act (counts three to seven) and seek "actual damages" for those alleged violations. Am. Compl. (ECF No. 4) at 58-61. Although Plaintiffs also claim to seek injunctive relief pursuant to 5 U.S.C. § 552a(g)(3)(A) of the Privacy Act, that provision relates to an alleged violation of section 552a(d)(1) of the Privacy Act (*i.e.*, a request to access records). Plaintiffs, however, do not allege that they made a request to access their records under section 552a(d)(1) nor do they allege a violation of that section. Consequently, they have not pled any basis for injunctive relief under the Privacy Act. It is well

settled that any injunctive relief sought under the Privacy Act is available only under subsections (g)(1)(A) (suits to amend an individual's record) and (g)(1)(B) (suits for access to a record), neither of which Plaintiffs assert here and both of which require administrative exhaustion. *Risley v. Hawk*, 108 F.3d 1396, 1397 (D.C. Cir. 1997) (per curiam); *Haase v. Sessions*, 893 F.2d 370, 374 (D.C. Cir. 1990); *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988); *Scott v. Conley*, 937 F. Supp. 2d 60, 79 (D.D.C. 2013) ("Our circuit precedent suggests that injunctive relief is not available for suits alleging violations . . . brought under either § 552a(g)(1)(C) or (g)(1)(D)."). Defendants also note that FBI and Department of Justice systems of records are exempted from the provisions of section 552a(d)(1). *See* 28 C.F.R. §§ 16.81 and 16.96.

Further, for Plaintiffs to have a cognizable claim under the Privacy Act, they must plausibly plead not only a violation of the Privacy Act provisions underlying counts three to seven of the Amended Complaint, but that the alleged violation was the result of intentional or willful conduct and caused an "adverse determination" or "'adverse effect' on [them] in the form of actual damages." *See Chichakli v. Tillerson*, 882 F.3d 229, 234 (D.C. Cir. 2018).  The failure to plausibly plead any of these elements is fatal to Plaintiffs' claims.  As addressed below, Plaintiffs have failed to plausibly plead the required elements, and thus their Privacy Act claims should be dismissed.

> 1. <u>Plaintiffs' Privacy Act Claims Fail Because They Have Not Plausibly Pled Intentional or Willful Conduct Or That Their Alleged Actual Damages Were Caused By The Alleged Privacy Act Violations.</u>

Plaintiffs seek actual damages pursuant to subsection 552a(g)(4) of the Privacy Act, Am. Compl. (ECF No. 4) at 60, and that subsection in turn references subsection (g)(1)(C) and (g)(1)(D).  *See* 5 U.S.C. § 552a(g)(4).  The government, however, only can be liable for actual damages under subsections (g)(1)(C) or (g)(1)(D) if it acted intentionally or willfully, *see* 5 U.S.C. § 552a(g)(4), and if Plaintiffs can establish that their alleged "actual damages" were caused by the

alleged Privacy Act violations. *See Chichakli*, 882 F.3d at 234. Plaintiffs have failed to plausibly plead either requirement.

> a. Plaintiffs Have Failed To Plausibly Plead Intentional Or Willful <u>Conduct</u>.

"The [Privacy] Act does not make the Government strictly liable for every affirmative or negligent action that might be said technically to violate the Privacy Act's provisions." *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984). Rather, "a violation of the statute 'must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful.'" *Maydak v. United States*, 630 F.3d 166, 179 (D.C. Cir. 2010). In sum, the words "'intentional' and 'willful' in § 552a(g)(4) do not have their vernacular meanings; instead, they are terms of art" that impose liability "'only when the agency acts in violation of the Act in a willful or intentional manner, either by committing the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act.'" *White v. OPM*, 840 F.2d 85, 87 (D.C. Cir. 1988).

Here, all of Plaintiffs' Privacy Act claims center around their allegation that the government failed to segregate the results of the search warrant in accordance with the Stored Communication Act. Although the government agrees with the district court's determination in the criminal proceeding that the government complied with that Act to the extent it applied to the results of the search warrant, *see* Transcript (Doc. 2039217), Case No. 23-3198 (D.C. Cir.), Appendix Vol. I, at ECF pp. 159-60, this Court need not reach that issue. The question before the Court instead is whether, given that and other related decisions by the district court, Plaintiffs have plausibly pled an intentional or willful violation of the Privacy Act.

To address that issue, it suffices that the district court denied Plaintiffs' pre-trial and post-trial motions based on an alleged violation of the Stored Communications Act and that defense

counsel did not object to the admission of the exhibits in question at trial. Even if this Court could revisit those decisions by the district court (to deny the pre and post-trial motions and to admit the exhibits into evidence), which Defendants do not concede, the district court's decisions establish that the conduct of the FBI and prosecutors could not plausibly be characterized as so "patently egregious" or contrary to law to satisfy the intentional and willfulness standard for liability under the Privacy Act.  *See, e.g., Kelley v. FBI*, 67 F. Supp. 3d 240, 257-63 (D.D.C. 2014) (dismissing improper maintenance claim under Privacy Act on motion to dismiss because plaintiff failed to "plead sufficient facts to support a plausible inference that the defendant's conduct was 'so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful,'" and noting that "[w]hile the[] allegations might support an inference that the agencies cast their net too broadly or that the information they amassed was not entirely accurate, they do not rise to the level of the flagrant and obvious disregard needed to support a claim for damages under the Privacy Act"); *Scott v. Conley*, 937 F. Supp. 2d 60, 80 (D.D.C. 2013) (dismissing Privacy Act claim on motion to dismiss because "[n]othing in [plaintiff's] complaints suggests that BOP acted without grounds for believing its action to be lawful or that it flagrantly disregarded his rights under the Privacy Act").

      b.   Plaintiffs Have Failed To Plausibly Plead That The Alleged <u>Violations Caused Their Conviction Or Sentencing Or Any Allegedly Resulting Actual Damages.</u>

To state a claim under the Privacy Act, Plaintiffs also must plead that the violation caused an adverse determination or adverse effect that resulted in actual damages.  *See also Thompson v. Dept. of State*, 400 F. Supp. 2d 1, 19 (D.D.C. 2005) (plaintiff must "show not only that the inaccurate records were considered in making the determination, but that an error in the records caused the determination").  "Actual damages" under the Privacy Act, moreover, is limited to

pecuniary loss and does not include loss of reputation or other generalized emotional injuries. *See FAA v. Cooper*, 566 U.S. 284, 298 (2012) ("[W]e think it likely that Congress intended 'actual damages' in the Privacy Act to mean special damages for proven pecuniary loss."); *see also Chichakli,* 882 F.3d at 234 ("To state a claim under the Privacy Act, a plaintiff must establish that . . . the violation had an 'adverse effect' on the plaintiff in the form of actual damages.").  Here, Plaintiffs appear to allege that the alleged Privacy Act violations caused their conviction and sentencing and thereby resulted in pecuniary harm in the form of fines and lost income.  Am. Compl. (ECF No. 4) at 58.  Although Plaintiffs also allege non-pecuniary harm, including emotional distress and reputational harm, such intangible harm does not constitute actual damages under the Privacy Act. *Cooper*, 566 U.S. at 298.

Plaintiffs Privacy Act claims fail because they have not plausibly alleged that the admission of the unfiltered search results as exhibits at trial caused their conviction and imprisonment as would be necessary to state a claim.  Plaintiffs allege that the information that should have been segregated from the search results before its admission at trial included "private conversations, friends lists, friends phone numbers, friends emails, certain financial transactions, certain financial aid and loan information" and "attendance at certain political events other than January 6th."  Am. Compl. (ECF No. 4) ¶ 42.  Plaintiffs' theory appears to be that this information is unrelated to Plaintiffs' conduct on January 6, 2021, and, because it is unrelated, it should not have been included in the admitted exhibits.  *Id*. ¶ 25.  The logical conclusion of that theory, however, is that the inclusion of this information in the exhibit could not plausibly have had any impact on the outcome of the trial.  And Plaintiffs have not plausibly pled otherwise.

Plaintiffs instead focus on a limited exchange between the prosecutors and Cynthia Price during cross-examination in which a Facebook message was addressed.  *Id*. ¶¶ 34-35 (citing

Appendix at page 415). That message related to the events of January 6, 2021, and so it is unclear on what basis Plaintiffs contend that the use of that message at trial violated the Secured Communications Act.[1] Moreover, defense counsel did not object to questioning at trial regarding that Facebook message. *See* Transcript (Doc. 2039217), Case No. 23-3198 (D.C. Cir.), Appendix Vol. II, at ECF pp. 84-86 (bates-numbered 415-417 of appendix).

Nevertheless, the district court explained that the limited information from the search results used at trial was not necessary for the court's finding of guilt. Case No. 21-719, Mem. Op. (ECF No. 127) at 20-21. Consequently, Plaintiffs cannot plausibly allege that the alleged violation of the Privacy Act caused their conviction and sentencing as would be necessary to state a claim. *See also Hubbard v. EPA,* 809 F.2d 1, 6 (D.C. Cir. 1986) (summary judgment granted to agency when plaintiff failed to "put forward any facts to indicate that but for inaccuracies in the passover document, OPM would have ruled in his favor"); *Mandel v. OPM*, 79 F. App'x 479, 481 (2d Cir. 2003) (no causal connection where plaintiff's "falsifications and omissions in his application for federal employment were, independently, sufficient to find him unsuitable for federal employment").

---

[1]     Plaintiffs assert that the "FBI application sought Facebook records dating back to November 2020, far beyond the 180-day statutory window permitted under the [Stored Communication Act] for the relevant category of communications." Am. Compl. (ECF No. 4) ¶ 18. However, the Act "allows the government to access contents that have been stored more than 180 days if the government uses a warrant, subpoena, or a court order." *Guest v. Leis*, 255 F.3d 325, 339 (6th Cir. 2001). The reference to 180 days does not limit the earliest time from which the government can obtain communications with an appropriate warrant. Nevertheless, Plaintiffs acknowledge that they "were aware that the FBI had obtained Facebook data beyond the statutory 180-day look back window" at the time of their motion to suppress in February 2023. Am. Compl. ECF No. 4) ¶ 11. Any Privacy Act claim based on that issue is time-barred because it would have arisen more than two years prior to the filing of this lawsuit. *Mitskog v. Dept. of Just.,* No. 23-5121, 2024 U.S. App. LEXIS 10865, at *3 (D.C. Cir. May 2, 2024).

2.  Plaintiffs Have Failed To Plausibly Plead Any Privacy Act Violation

Plaintiffs purport to assert violations of the Privacy Act under section 552a(b) (count three); section 552a(e)(6) (count four); section 552a(e)(7) (count five); section 552a(e)(9) (count six); and section 552a(e)(10) (count seven).  For reasons set forth below, Plaintiffs have not plausibly pled a claim under any of these sections.

a.  Section 552a(b)

Plaintiffs assert a claim of unauthorized disclosure under 5 U.S.C. § 552a(b) based on the FBI's sharing of the results of the search to Department of Justice prosecutors and based on the prosecutors "disclosing these private records in open court."  Am. Compl. (ECF No. 4) ¶¶ 86, 88. These claims fail.

The claims against the FBI fail because the Privacy Act permits an intra-agency disclosure, such as the one at issue here, under subsections 552a(b)(1) and (b)(3).  Section 552a(b)(1) of the Privacy Act permits the FBI to provide to officials within the Department, of which the FBI is a component, information contained in FBI records when those officials "have a need for the [information] in the performance of their duties."  5 U.S.C. § 552a(b)(1); *see also Walker v. Ashcroft*, Civ. A. No. 99-2385 (GK), 2001 WL 37153642, at *8 n.6 (D.D.C. Apr. 30, 2001) ("FBI employees and federal prosecutors are considered employees of the same agency, namely the Department of Justice.  As such, the need-to-know exception properly applies to disclosures between these employees." (citing 5 U.S.C. § 552a(b)(1)), *aff'd*, No. 01-5222, 2002 WL 335530, at *1 (D.C. Cir. Jan. 25, 2002) (summarily affirming the district court's finding regarding the "need to know" exception of the Privacy Act).

Here, the warrant expressly permitted the FBI to provide the full Facebook return to prosecutors.  It stated:

> The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

Case No. 21-719, Exhibit to Mot. to Suppress (ECF No. 82-3) at ECF p. 8. Thus, the prosecutors had a need for the information to perform their duties.

Relatedly, section 552a(b)(3) permits the FBI to disclose records "for a routine use." 5 U.S.C. § 552a(b)(3). The statute defines "routine use" as "the use of such record for a purpose which is compatible with the purpose for which it was collected[.]" *Id.* § 552a(a)(7). The FBI has established as a routine use the transmission of records indicating a potential violation of law to appropriate prosecutors, System of Records BRU-1, 66 FR 33558 (June 22, 2001)[2] As the information was collected by the FBI for a criminal law enforcement purpose, its sharing with the Department of Justice for purposes of the prosecution of Plaintiffs represents a use compatible with the reason for the initial collection.

The claim against the Department of Justice fails because the Justice Department has established as a routine use the dissemination of a record related to a criminal case to a federal court "in accordance with constitutional, substantive, or procedural law or practice." System of Records Notice, 53 FR 1861 (Jan. 22, 1988). Here, Federal prosecutors moved to admit the exhibits at issue, defense counsel did not object to their admission, and the district court admitted

---

[2]     This routine use is not limited to internal federal sharing, but allows the FBI to share information "indicating a violation or potential violation of law (whether civil or criminal), regulation, rule, order, or contract, . . . with the appropriate entity (whether federal, state, local, joint, tribal, foreign, or international), that is charged with the responsibility of investigating, prosecuting, and/or enforcing such law, regulation, rule, order, or contract."

the exhibits into evidence. *See* Transcript (Doc. 2039217), Case No. 23-3198 (D.C. Cir.), Appendix Vol. I, at ECF pp. 269-70 (referencing the admission of Exhibits 308B, 309 and 309A without objection); Am. Compl. (ECF No. 4) ¶ 41 (referencing the exhibits as Exhibits 308B, 309 and 309A). Thus, the Department acted in accordance with multiple routine uses.

b.    Section 552a(e)(6)

Plaintiffs allege a violation of section 552a(e)(6) of the Privacy Act, which requires agencies prior to disseminating a record about an individual to a person other than an agency to make reasonable efforts to assure that the records are accurate, complete, timely, and relevant for agency purposes. As an initial matter, this section applies to regulate disseminations of Privacy Act records made to persons outside an agency. *Lamb v. Millennium Challenge Corp.*, 228 F. Supp. 3d 28, 40 (D.D.C. 2017). Because the FBI is part of the Department of Justice, Plaintiffs have no claim against the FBI based on its sharing of the search results within the Department.

To the extent Plaintiffs assert this claim against the Department, it fails as well. The Department did not disseminate the exhibits but moved the exhibits into evidence and the district court admitted them, noting the absence of objection by the defense. The exhibits, moreover, have not been entered by the clerk on the public docket, and Plaintiffs have failed to plausibly allege how any portion of the exhibits they claim should have been filtered is publicly available. To the extent the content of any Facebook message was addressed in open court during trial such that it could be characterized as having been disseminated by the government, it was limited to Facebook messages that related to the events of January 6, as already addressed above. Plaintiffs have failed to plausibly plead how that disseminated information was inaccurate or irrelevant to the proceedings as would be required to state a claim under section 552a(e)(6). Am. Compl. (ECF No. 4) ¶ 98.

But even were the Court to determine that the three exhibits were disseminated by the Department based on their admission by the court at trial, Plaintiffs still have failed to plead a violation of this section. Plaintiffs have not plausibly pled that the information in the exhibits was inaccurate, incomplete, or irrelevant "for agency purposes." *See* 5 U.S.C. § 552a(e)(6); *see also Doe v. Dept. of Just.*, 660 F. Supp. 2d 31, 43 (D.D.C. 2009) (dismissing claim where plaintiff failed to plausibly plead that the records were erroneous or incomplete).

### c.  Sections 552a(e)(7), 552a(e)(9) and 552a(e)(1)

Plaintiffs also have failed to plausibly plead a violation under the Privacy Act provisions they cite in counts five, six and seven of the Amended Complaint. Section 552a(e)(7) is inapplicable because that provision does not apply to the maintenance of a record "pertinent to and within the scope of an authorized law enforcement activity." *See* 5 U.S.C. § 552a(e)(7). As already addressed above, the search results satisfy that exception and thus Plaintiffs have failed to plausibly plead a claim under this section.

Plaintiffs also have failed to plausibly plead a violation of sections 552a(e)(9) and 552a(e)(10). "To successfully state a claim under these subsections, plaintiff must identify a 'rule or safeguard . . . that [the Department] should have established but did not.'" *Doe,* 660 F. Supp. 2d at 43. Plaintiffs' conclusory allegations (Am. Compl. ¶¶ 115-17) are insufficient to raise an inference that any violation occurred. Moreover, the extensive Department of Justice regulations regarding the Privacy Act, as well as System of Record Notices for the record systems of the FBI and Department of Justice, establish rules of conduct and those rules are published, which is sufficient to "instruct." *Doe,* 660 F. Supp. 2d at 43; *see also* 28 C.F.R. §§ 16.81 and 16.96. Plaintiffs' section 552a(e)(10) claim fails because Plaintiffs do not allege an issue with the applicable system of records, but instead with the review process of the particular records at issue.

*See* 5 U.S.C. § 552a(e)(10) (referencing the establishment of appropriate "administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained").

## CONCLUSION

For the foregoing reasons, this action should be dismissed with prejudice.

Dated: August 13, 2025                    Respectfully submitted,

                                          JEANINE FERRIS PIRRO
                                          United States Attorney


                                          By:  _____/s/ Jeremy S. Simon_____
                                               JEREMY S. SIMON, D.C. Bar #447956
                                               Assistant United States Attorney
                                               601 D Street, NW
                                               Washington, DC 20530
                                               (202) 252-2528

                                          *Attorneys for United States of America*